# Exhibit A

**PRE-PUBLICATION NOTICE**

On June 30, 2023, Michal Freedhoff, the Assistant Administrator for EPA's Office of Chemical Safety and Pollution Prevention, signed the following document:

|  |  |
|---|---|
| Action: | Final Rule. |
| Title: | Asbestos; Reporting and Recordkeeping Requirements under the Toxic Substances Control Act (TSCA) |
| FRL #: | 8632-01-OCSPP. |
| Docket ID #: | EPA-HQ-OPPT-2021-0357. |

EPA is submitting this document for publication in the *Federal Register* (FR). EPA is providing this document solely for the convenience of interested parties.  It is not the official version of the document for purposes of public notice and comment under the Administrative Procedure Act. This document is not disseminated for purposes of EPA's Information Quality Guidelines and does not represent an Agency determination or policy. While we have taken steps to ensure the accuracy of this Internet version of the document that was signed, the official version will publish in a forthcoming FR publication, which will appear on the Government Printing Office's govinfo website (https://www.govinfo.gov/app/collection/fr) and on Regulations.gov (https://www.regulations.gov) in the docket identified above.

Once the official version of this document is published in the *Federal Register*, this version will be removed from the Internet and replaced with a link to the official version. At that time, you will also be able to access the on-line docket for this *Federal Register* document at https://www.regulations.gov.

For further information about the docket and, if applicable, instructions for commenting, please consult the ADDRESSES section in the front of the Federal Register document.

This page is intentionally blank.

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

BILLING CODE 6560-50-P

**ENVIRONMENTAL PROTECTION AGENCY**

**40 CFR Part 704**

**[EPA-HQ-OPPT-2021-0357; FRL-8632-01-OCSPP]**

**RIN 2070-AK99**

**Asbestos; Reporting and Recordkeeping Requirements under the Toxic Substances Control Act (TSCA)**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY**: The Environmental Protection Agency (EPA) is finalizing reporting and recordkeeping requirements for asbestos under the Toxic Substances Control Act (TSCA). EPA is requiring certain persons who manufactured (including imported) or processed asbestos and asbestos-containing articles, including as an impurity, in the four years prior to the date of publication of this final rule to electronically report certain exposure-related information. This action results in a one-time reporting requirement. EPA emphasizes that this requirement includes asbestos that is a component of a mixture. The information sought includes presence, types, and quantities of asbestos (including asbestos that is a component of a mixture) and asbestos-containing articles that were manufactured (including imported) or processed, types of use, and employee data. EPA and other Federal agencies will use reported information in considering potential future actions, including risk evaluation and risk management activities.

**DATES:** This final rule is effective [INSERT DATE 30 DAYS AFTER DATE OF PUBLICATION IN THE *Federal Register*].

**ADDRESSES:** The docket for this action, identified by docket identification (ID) number EPA-

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

2

HQ-OPPT-2021-0357, is available online at *https://www.regulations.gov* or in person at the

Office of Pollution Prevention and Toxics Docket (OPPT Docket) in the Environmental

Protection Agency Docket Center (EPA/DC). All documents in the docket are listed on

*https://www.regulations.gov*. Although listed in the index, some information is not publicly

available, e.g., Confidential Business Information (CBI) or other information whose disclosure is

restricted by statute. Certain other material, such as copyrighted material, is not placed on the

internet and will be publicly available only in hard copy form. Additional instructions on visiting

the docket, along with more information about dockets generally, is available at

*https://www.epa.gov/dockets*.

**FOR FURTHER INFORMATION CONTACT:** *For technical information contact:* Daniel R.

Ruedy, Data Gathering and Analysis Division (Mailcode: 7406M), Office of Pollution

Prevention and Toxics, Environmental Protection Agency, 1200 Pennsylvania Ave., NW.,

Washington, DC 20460-0001; telephone number: (202) 564-7974; email address:

*ruedy.daniel@epa.gov*.

   *For general information contact*: The TSCA-Hotline, ABVI-Goodwill, 422 South

Clinton Ave., Rochester, NY 14620; telephone number: (202) 554-1404; email address: *TSCA-

Hotline@epa.gov*.

**SUPPLEMENTARY INFORMATION:**

**I. Executive Summary**

*A. Does this action apply to me?*

   You may be potentially affected by this action if you manufacture (defined by statute to

include import) or process asbestos, as defined for purposes of this TSCA rulemaking. The use

of the term "manufacture" in this document encompasses "import," and the term "manufacturer"

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

encompasses "importer." Any use of the term "asbestos" will apply to asbestos in bulk form, in an article and/or product, as an impurity, or as a component of a mixture. For a more thorough discussion of the subject asbestos types, please see Unit IV.A. of this document. You may also be potentially affected by this action if you manufacture (including import) or process other chemical substances or mixtures that contain asbestos, including as an impurity, whether or not those chemical substances or mixtures are on the TSCA Chemical Substance Inventory. The TSCA Chemical Substance Inventory contains all existing chemical substances—including those with CBI claims protecting their identity—manufactured, processed, or imported in the United States that do not qualify for an exemption or exclusion under TSCA.

This rule does not require reporting on substances that are excluded from the definition of "chemical substance" in TSCA section 3(2)(B). Those exclusions include, but are not limited to: Any pesticide (as defined by the Federal Insecticide, Fungicide, and Rodenticide Act) when manufactured, processed, or distributed in commerce for use as a pesticide; any food, food additive, drug, cosmetic, or device, as defined by the Federal Food, Drug, and Cosmetic Act, when manufactured, processed, or distributed in commerce for use as a food, food additive, drug, cosmetic or device; tobacco or any tobacco product; any source material, special nuclear material, or byproduct material as such terms are defined in the Atomic Energy Act of 1954; and, any article the sale of which is subject to the tax imposed by section 4181 of the Internal Revenue Code of 1954. Substances which have been manufactured or imported for intended use as any food, food additive, drug, cosmetic, or device as defined by the Federal Food, Drug, and Cosmetic Act, are not chemical substances under TSCA.

The following list of North American Industry Classification System (NAICS) codes are provided to assist in determining whether this action might apply to you. This list is not intended

This is a prepublication version of a final rule signed by EPA on June 30, 2020, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

4

to be exhaustive, but rather provides a guide to help readers determine whether this document applies to them. Potentially affected entities, which although the terms "business," "company," and "firm" can have different meanings in some contexts, all are used to describe entities regulated under this rule, may include entities identified in:

• NAICS code 2122 – Metal Ore Mining.

• NAICS code 2123 – Nonmetallic Mineral Mining and Quarrying.

• NAICS code 322 – Paper Manufacturing.

• NAICS code 323 – Printing and Related Support Activities.

• NAICS code 324121 – Asphalt Paving Mixture and Block Manufacturing.

• NAICS code 325 – Chemical Manufacturing.

• NAICS code 326 – Plastics and Rubber Products Manufacturing.

• NAICS code 327 – Nonmetallic Mineral Product Manufacturing.

• NAICS code 331 – Primary Metal Manufacturing.

• NAICS code 332 – Fabricated Metal Product Manufacturing.

• NAICS code 333 – Machinery Manufacturing.

• NAICS code 334 – Computer and Electronic Product Manufacturing.

• NAICS code 335 – Electrical Equipment, Appliance, and Component Manufacturing.

• NAICS code 336 – Transportation Equipment Manufacturing.

• NAICS code 337 – Furniture and Related Products Manufacturing.

• NAICS code 339 – Miscellaneous Manufacturing.

• NAICS code 42 – Wholesale Trade.

• NAICS code 441 – Motor Vehicle and Parts Dealers.

• NAICS code 444 – Building Material and Garden Equipment and Supplies Dealers.

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

5

• NAICS code 445110 – Supermarkets and Other Grocery Retailers (except Convenience Retailers).

• NAICS code 445131 – Convenience Retailers.

• NAICS code 449 – Furniture, Home Furnishings, Electronics, and Appliance Retailers.

• NAICS code 455 – General Merchandise Retailers.

• NAICS code 456110 – Pharmacies and Drug Retailers.

• NAICS code 4571 – Gasoline Stations.

• NAICS code 459 – Sporting Goods, Hobby, Musical Instrument, Book, and Miscellaneous Retailers.

• NAICS code 56221 – Hazardous Waste Treatment and Disposal.

• NAICS code 562920 – Materials Recovery Facilities.

You should carefully examine the regulatory text in this document to determine if your business is impacted by this rule. If you have any questions regarding the applicability of this action to a particular entity, consult the technical contact person listed under **FOR FURTHER INFORMATION CONTACT**.

*B. What is the Agency's authority for taking this action?*

EPA is taking this action under section 8(a)(1) of TSCA, 15 U.S.C. 2607(a)(1), which generally authorizes EPA to promulgate rules that require each person, other than small manufacturers (including importers) or processors, who manufactures (including import) or processes, or proposes to manufacture (including import) or process, the chemical substance identified in the rule, to maintain such records and submit such reports as the EPA Administrator may reasonably require.

Although TSCA section 8(a)(1) provides an express exemption for small manufacturers

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

6

(including importers) and processors, TSCA section 8(a)(3) enables EPA to require small manufacturers (including importers) and processors to report under TSCA section 8(a)(1) with respect to a chemical substance that is the subject of a rule proposed or promulgated under TSCA sections 4, 5(b)(4), or 6, an order in effect under TSCA sections 4 or 5(e), a consent agreement under TSCA section 4, or relief that has been granted under a civil action under TSCA sections 5 or 7. Asbestos is subject to TSCA section 6 rulemaking under the Asbestos Ban and Phaseout rule of 1989 (Ref. 1). A portion of this rule was overturned in *Corrosion Proof Fittings v. EPA*, 947 F.2d 1201 (5th Cir. 1991), however, a portion remains. The remaining portion of EPA's 1989 asbestos ban and phaseout rule prohibits the manufacture, importation, processing, and distribution in commerce of: Commercial Paper, Corrugated Paper, Rollboard, Specialty Paper, Flooring Felt, and New Uses if they contain asbestos (the manufacture, importation or processing of which would be initiated for the first time after August 25, 1989) (40 CFR 763.160 *et seq.*).

Thus, EPA is exercising its authority provided under TSCA section 8(a)(3)(A)(ii) to require small manufacturers (including importers) and processors of asbestos or asbestos-containing mixtures (other than Libby amphibole asbestos) to maintain records and submit reports. However, Libby amphibole asbestos is not subject to an applicable proposed or promulgated rule under TSCA sections 4, 5(b)(4) or 6, an order in effect under TSCA section 4 or 5(e) or a consent agreement under TSCA section 4, nor is it the subject of relief that has been granted under a civil action under TSCA section 5 or 7. Therefore, small manufacturers (including importers) and processors of Libby amphibole asbestos are exempt from this reporting and recordkeeping rule with respect to Libby amphibole asbestos; this exemption does not extend to other types of asbestos. Note that small manufacturers (including importers) and processors of types of asbestos found in Libby amphibole (e.g., tremolite) are subject to this rule.

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
7

For a more thorough discussion of the one-time reporting requirements for small

manufacturers (including importers) and processors, see Unit IV.B. EPA has set an annual sales

threshold, in any calendar year from 2019 to 2022, when combined with those of their ultimate

parent company (if any) of $500,000, below which manufacturers and processors are not subject

to the requirements of this rulemaking (i.e., the manufacturer/processor would need to report if

its annual sales, combined with its parent company, was above $500,000 during 2019, 2020,

2021, and/or 2022).

TSCA section 8(a)(1)(A) also excludes from the scope of EPA's regulatory authority

under that paragraph any manufacturer (including importer) or processor of "a chemical

substance described in subparagraph (B)(ii)." TSCA section 8(a)(1)(B)(ii), in turn, provides EPA

authority to require recordkeeping and reporting by each person (other than a small manufacturer

[including importer] or processor) who manufactures (including imports) or processes, or

proposes to manufacture (including import) or process, a chemical substance "in small

quantities…solely for purposes of scientific experimentation or analysis or chemical research on,

or analysis of, such substance or another substance, including any such research or analysis for

the development of a product," but only to the extent EPA determines the recordkeeping and/or

reporting is necessary for the effective enforcement of TSCA. EPA is not requiring

recordkeeping or reporting by persons who manufacture (including import) or process, or

propose to manufacture (including import) or process, asbestos in small quantities solely for

research or analysis for the development of a product as described in TSCA section

8(a)(1)(B)(ii). *Small quantities solely for research and development"* is defined in 40 CFR

704.3 to mean "quantities of a chemical substance manufactured, imported, or processed or

proposed to be manufactured, imported, or processed solely for research and development that

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

are not greater than reasonably necessary for such purposes."

TSCA section 14 imposes requirements for the assertion, substantiation, and review of information that is claimed as confidential under TSCA (also known as confidential business information or CBI). Some information submitted at the time of the reporting under this rule may be claimed as confidential.

*C. What action is the Agency taking?*

EPA is requiring asbestos manufacturers (including importers) and processors to report to EPA certain information known to or reasonably ascertainable by those entities. For this action, the term "asbestos" includes the following types of asbestos as described in more detail in Unit IV.A. of this document:

• Asbestos – CASRN 1332-21-4;

• Chrysotile – CASRN 12001-29-5;

• Crocidolite – CASRN 12001-28-4;

• Amosite – CASRN 12172-73-5;

• Anthophyllite – CASRN 77536-67-5;

• Tremolite – CASRN 77536-68-6;

• Actinolite – CASRN 77536-66-4; and

• Libby amphibole asbestos – CASRN not applicable (mainly consisting of tremolite [CASRN 77536-68-6], winchite [CASRN 12425-92-2], and richterite [CASRN 17068-76-7]). If a specific asbestos type is unknown, a submitter will provide information under the general asbestos form (CASRN 1332-21-4). See Unit II.B. for more information about what is considered asbestos.

The following is a brief list of the primary data requirements in this rule. These

Case 3:19-cv-03807-EMC Document 101-1 Filed 07/10/23 Page 12 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
9

requirements are described in detail in Unit IV.

1. Asbestos domestic manufacturers (Asbestos Mine and Mill): The provisions in this rule require asbestos domestic manufacturers to provide the quantity manufactured of each asbestos type, activity for each asbestos type (i.e., mining and/or milling), and employee exposure information associated with each activity. This includes situations in which asbestos is being mined or milled as an intentional component or as an impurity, such as in vermiculite, talc, and other substances.

2. Asbestos importers: The provisions in this rule require importers of asbestos to provide the quantity imported of each asbestos type, activity for each asbestos type, and employee exposure information associated with each activity. This includes importers of mixtures containing asbestos, articles containing asbestos, and impurities (in articles, bulk materials, or mixtures).

3. Asbestos processors: The provisions in this rule require processors of asbestos (including processors of mixtures or articles) to provide the quantity processed per asbestos type, activity for each asbestos type (i.e., primary and/or secondary processing), and employee exposure information associated with each activity. This includes both *primary processors* and *secondary processors* of asbestos, as described in Units IV.F.3. and 4. This includes situations in which asbestos occurs as an impurity, such as in vermiculite, talc, and other substances.

*D. Why is the Agency taking this action?*

The Agency is taking this action to obtain certain information known to or reasonably ascertainable by manufacturers (including importers) and processors of asbestos that EPA believes will help the Agency better understand the exposures and uses associated with asbestos, including asbestos in articles and as an impurity (in articles, bulk materials, or mixtures, and

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
10

other substances), that fall under the scope of this rule. Reported information will be used by

EPA and other Federal agencies in considering potential actions involving asbestos, including

EPA's TSCA risk evaluation and risk management activities. Requiring reporting may also

increase public access to this information, which improves information quality overall, and may

help inform and improve compliance assurance and accountability, and drive industry

innovation. This action is also subject to a settlement agreement, as discussed in Unit II.C.3. of

this document. For a more thorough discussion of the TSCA risk evaluation and risk

management process, please see Unit II.C.5. of this document.

*E. What are the estimated incremental impacts of this action?*

EPA has prepared an Economic Analysis (EA) (Ref. 2) of the potential impacts

associated with this rule. The primary purpose of this rule is to collect detailed data on asbestos

uses and exposures. Reported information will be used by EPA and other Federal agencies in

considering potential actions involving asbestos, including EPA's TSCA risk evaluation and risk

management activities. EPA estimates that 186 to 1,044 firms may submit reports for 268 to

1,126 sites based on the manufacturing (including importing) or processing of asbestos,

including mixtures, products, and articles containing asbestos, including as an impurity. More

detail on these estimates and related assumptions and uncertainties are provided in the revised

EA for the final rule (Ref. 2).

The industry is expected to incur one-time burdens and costs associated with rule

familiarization, form completion, CBI claim substantiation, recordkeeping, and electronic

reporting activities. Rule familiarization costs for reporting firms are estimated to require an

average of 24 hours and $2,036 per firm. Where asbestos is intentionally manufactured or

processed, the estimated average form completion burden and cost per site ranges from 12 hours

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

and $1,243 to approximately 26 hours and $2,372, depending on the type of activities in which the respondent is engaged and the information known to or reasonably ascertainable by them. For articles where asbestos occurs as an impurity, the estimated average form completion burden and cost per site ranges from approximately 17 hours and $1,674 to about 39 hours and $3,451, again depending on the type of activities and the information that is known or reasonably ascertainable. CBI claim substantiation, recordkeeping, and electronic reporting activities are estimated to require approximately 4 hours and $347 per firm. Manufacturers and processors of articles who believe that asbestos may have been present as an impurity are also expected to incur one-time burdens and costs associated with rule familiarization and compliance determination that average approximately 67 hours and $4,703.

EPA estimates a total industry quantified burden of approximately 4.5 million hours, with a quantified total cost of approximately $319 million to $323 million.

EPA estimates that approximately 66,000 small firms will be affected by the rule. Of those small firms, 99.93 percent are expected to have cost impacts of less than 1% of annual revenues, 0.07 percent are expected to have impacts between 1-3%, and none are expected to have impacts of more than 3% of annual revenues. Costs to small businesses range from $4,430 to $11,273 per firm. Total costs to small entities are approximately $279 million to $283 million. The Agency is expected to incur a cost of approximately $654,000. The total social burden and cost are therefore estimated to be approximately 4.5 million hours and $320 million to $324 million, respectively (Ref. 2).

EPA did not attempt to quantify the benefits of this action. As discussed in the economic analysis, EPA expects that information supplied as a result of this rule will allow EPA to more effectively and expeditiously evaluate risks posed by asbestos and manage them. Further,

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

12

requiring reporting may provide the benefit of increased public access to this information, which improves information quality overall, and may help inform and improve compliance assurance and accountability, and drive industry innovation. Asbestos is hazardous to human health. Ultimately, enhancing the risk evaluation process will have positive consequences for human health and the environment and may enable a more efficient allocation of EPA's and society's resources.

## II. Background

*A. What is TSCA section 8(a)?*

TSCA section 8(a)(1) generally authorizes EPA to promulgate rules that require entities, other than small manufacturers (including importers) or processors, who manufacture (including import) or process, or propose to manufacture (including import) or process, a chemical substance to maintain such records and submit such reports as the EPA Administrator may reasonably require.

Under TSCA section 8(a)(2), EPA may require reporting and recordkeeping of the following information, to the extent the information is known to or reasonably ascertainable by the submitter:

• The common or trade name, chemical identity and molecular structure of each chemical substance or mixture;

• Categories or proposed categories of use for each substance or mixture;

• Total amount of each substance or mixture manufactured (including imported) or processed, the amounts manufactured (including imported) or processed for each category of use, and reasonable estimates of the respective amounts to be manufactured (including imported) or processed for each of its categories of use or proposed categories of use;

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

13

• Descriptions of byproducts resulting from the manufacture (including import), processing, use, or disposal of each substance or mixture;

• All existing information concerning the environmental and health effects of each substance or mixture;

• The number of individuals exposed, and reasonable estimates of the number of individuals who will be exposed, to each substance or mixture in their places of employment and the duration of their exposure; and

• The manner or method of disposal of each substance or mixture, and any change in such manner or method.

*B. What is asbestos?*

Asbestos is one or more of a group of highly fibrous silicate minerals that readily separate into long, thin, strong fibers that have sufficient flexibility to be woven, are heat resistant and chemically inert, are electrical insulators, and are therefore suitable for uses where incombustible, nonconducting, or chemically-resistant materials are required.

Asbestos is a mineral fiber that occurs in rock and soil. Because of its fiber strength and heat resistance, asbestos has been used in a variety of building construction materials for insulation and as a fire retardant. Asbestos has also been used in a wide range of manufactured goods, mostly in building materials (roofing shingles, ceiling and floor tiles, paper products, and asbestos cement products), friction products (automobile clutch, brake, and transmission parts), heat-resistant fabrics, packaging, gaskets, and coatings (Ref. 3).

For purposes of this rule, EPA considers "asbestos" to include the asbestiform varieties included in the definition of asbestos in TSCA Title II (added to TSCA in 1986), section 202 and Libby amphibole asbestos. "Asbestos" is defined in TSCA Title II, section 202 as the

This is a prepublication version of a final rule signed by EPA on June 30, 2023, and is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

14

asbestiform varieties of six fiber types – chrysotile (serpentine), crocidolite (riebeckite), amosite (cummingtonite-grunerite), anthophyllite, tremolite, or actinolite. The general CAS Registry Number (CASRN) of asbestos is 1332-21-4; this is the only asbestos type on the TSCA Inventory. However, CASRNs are also available for specific fiber types. See Unit IV.A.1. for additional discussion.

In addition, EPA is including reporting for Libby amphibole asbestos (mainly consisting of tremolite [CASRN 77536-68-6], winchite [CASRN 12425-92-2], and richterite [CASRN 17068-76-7]) in order to help determine if this particular type of asbestos continues to be manufactured (including imported) or processed in the United States. The term "Libby amphibole asbestos" is used in this document to refer to the naturally occurring mixture of amphibole mineral fibers of varying elemental composition (winchite, richterite, tremolite, etc.) that have been identified in the Rainy Creek complex near Libby, Montana (Ref. 4). EPA does not anticipate that there is ongoing manufacture (including import) or processing of the Libby amphibole asbestos, but to help confirm this understanding has included this substance in the scope of this rule.

EPA has determined reporting on Libby amphibole asbestos' component parts, winchite and richterite, which are not asbestos types but commonly comprise Libby amphibole asbestos samples, shall be included in the scope of this TSCA section 8(a)(1) data collection and be reported on individually in addition to reporting on Libby amphibole asbestos (Ref. 5). Any reporting on Libby amphibole asbestos will improve EPA's understanding of this substance and will inform risk evaluation activities involving asbestos.

Asbestos is a hazard to human health (Ref. 6). Some of the health effects caused by exposure to asbestos are:

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

• Lung cancer;

• Ovarian cancer;

• Laryngeal cancer;

• Mesothelioma, a cancer of the thin lining of the lung, chest and the abdomen and heart; and

• Respiratory effects (e.g., asbestosis, non-malignant respiratory disease, deficits in pulmonary function, diffuse pleural thickening and pleural plaques).

In the TSCA Risk Evaluation for Asbestos Part I: Chrysotile Asbestos published in December 2020 (Ref. 6), EPA identified and evaluated the reasonably available information for chrysotile asbestos, focusing on inhalation exposures and cancer outcomes as the hazards of asbestos exposure are well-established (Ref. 7).

For a more thorough discussion on the asbestos types addressed by this rule, see Unit IV.A.1 of this document.

*C. What are relevant past and ongoing EPA TSCA actions on asbestos?*

*1. 1982 Asbestos Reporting Requirements Rule.*

In 1982, EPA finalized a rule entitled: "Asbestos Reporting Requirements" (47 FR 33198, August 30, 1982) (TSH-FRL-2124-4), under the authority of TSCA section 8(a) that required one-time reporting to EPA by asbestos manufacturers, importers, and processors. The information sought included data on the quantities of asbestos used in making products, employee exposure data, and waste disposal and pollution control equipment data. Reported information was used by EPA and other Federal agencies in considering the regulation of asbestos.

The information gathered as a result of the 1982 data collection rule was used in the

Case 3:19-cv-03807-EMC   Document 101-1   Filed 07/10/23   Page 19 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
16

drafting of the 1989 rule entitled "Asbestos: Manufacture, Importation, Processing, and Distribution in Commerce Prohibitions" (54 FR 29460, July 12, 1989 (FRL-3476-2)). In that action, EPA used TSCA section 6 authority to ban most asbestos-containing products. However, most of the ban was overturned in 1991 by the Fifth Circuit Court of Appeals. *Corrosion Proof Fittings v. EPA*, 947 F.2d 1201 (5th Cir. 1991). As a result, the 1989 asbestos regulation only bans new uses of asbestos in products that would be initiated "for the first time" after 1989 and five other specific product types (40 CFR part 763, Subpart I).

It has been more than 40 years since the 1982 rule was implemented, and EPA needs an updated data collection to better understand the universe of asbestos types in commerce and the specific entities presently manufacturing (including importing) and processing asbestos, including asbestos-containing products. This rule is modeled after the 1982 data collection but requires more detailed information from manufacturers (including importers) and processors in addition to information about asbestos as an impurity.

*2. Chemical Data Reporting (CDR) Rule.*

In limited circumstances, asbestos has been reported under the Chemical Data Reporting (CDR) rule (40 CFR part 711). The CDR rule requires manufacturers (including importers) to provide EPA with information on the production and use of chemicals in commerce (Ref. 8). Under CDR, naturally occurring substances (including asbestos), impurities, and chemical substances when imported as part of articles are exempted from reporting (Ref. 9). This final rule differs from the existing CDR universe of data collected as it: (a) is a one-time data collection as opposed to a reoccurring data collection; (b) requires reporting for naturally-occurring asbestos; (c) requires processors of asbestos to report (i.e., sites manufacturing (including importing) and/or processing asbestos are subject to this rule); and (d) requires reporting by entities who are

Case 3:19-cv-03807-EMC   Document 101-1   Filed 07/10/23   Page 20 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
17

manufacturing (including importing), and/or processing asbestos and to whom the asbestos

content (i.e., asbestos type and presence, or asbestos type and quantity, if known) is known or

reasonably ascertainable (see TSCA section 8(a)(2)). "Known to or reasonably ascertainable by"

is defined at 40 CFR 704.3 to include "all information in a person's possession or control, plus all

information that a reasonable person similarly situated might be expected to possess, control, or

know." EPA acknowledges that it is possible that an importer, particularly an importer of articles

containing asbestos, including as an impurity, may not have knowledge that they have imported

asbestos and thus not report under this rule, even after they have conducted their due diligence

under this reporting standard as described in this paragraph. Such an importer should document

its activities to support any claims it might need to make related to due diligence. This rule also

differs from CDR data collection as it applies to impurities and imported articles, both of which

are exempted from CDR data collection (40 CFR 711.10(b) & (c)) (Ref. 9 and Ref. 10).

*3. TSCA Section 21 Petitions on Asbestos.*

On September 27, 2018, and January 31, 2019, respectively, petitioners Asbestos Disease

Awareness Organization et al. (ADAO) (Ref. 11), and Attorneys General from ten states and the

District of Columbia (the States) (Ref. 12) submitted petitions under TSCA section 21 (15 U.S.C.

2620) requesting EPA to amend the CDR Rule in ways that petitioners asserted would increase

reporting of asbestos. Both petitions sought to close alleged asbestos CDR reporting gaps

(including immediate submission of asbestos reports), remove the naturally occurring and

byproduct exemptions, lower the reporting threshold, require reporting by processors, and

eliminate the ability to claim information as confidential, in order to maximize the information

reported to aid the Agency in conducting the ongoing TSCA section 6 risk evaluation of asbestos

and subsequent TCSA Section 6(a) risk management rule (see Unit II.C.5. for more information).

Case 3:19-cv-03807-EMC Document 101-1 Filed 07/10/23 Page 21 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

18

EPA denied the petitions on December 21, 2018, and April 30, 2019, respectively, and issued associated explanations for the denials in the *Federal Register* on February 12, 2019 (84 FR 3396 (FRL-9988-56)), and May 8, 2019 (84 FR 20062 (FRL-9992-67)), respectively, asserting that the petitioners failed to demonstrate that it is necessary to amend the CDR rule. EPA's denial was also in part due to a timing issue with the asbestos risk evaluation.

Petitioners filed lawsuits on February 18, 2019, and June 28, 2019, respectively, in the U.S. District Court in the Northern District of California, reiterating concerns about the need to amend the CDR rule to increase asbestos reporting. *Asbestos Disease Awareness Organization v. EPA,* No. 19-CV-00871; *State of California et al. v. EPA,* No. 19-CV-03807. The cases were consolidated. On December 22, 2020, after full briefing and oral argument, the Court issued an opinion granting summary judgment to Plaintiffs and denying summary judgment to EPA. Following the litigation, EPA reached an agreement with the Plaintiffs on June 7, 2021. The parties agreed that no later than nine months from the effective date of the agreement (Ref. 13), EPA would sign for publication in the *Federal Register*, a notice of proposed action to promulgate a rule pursuant to TSCA section 8(a), 15 U.S.C. 2607(a), for the maintenance of records and submission to EPA of reports by manufacturers (including importers) and processors of asbestos (including asbestos that is a component of a mixture), and articles containing asbestos (including as an impurity) that address the information-gathering deficiencies identified in the Court's Summary Judgment Order. Additionally, the parties agreed that no later than eighteen months from the effective date of the agreement (Ref. 13), EPA would sign for publication in the *Federal Register* a notice of final action regarding the proposed TSCA section 8(a) rule. Pursuant to the agreement between the parties, EPA notified Plaintiffs in November 2022 that EPA would miss the deadline to sign the final rule within eighteen months from the

Case 3:19-cv-03807-EMC  Document 101-1  Filed 07/10/23  Page 22 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
19

effective date of the agreement, and that it expected signature in late April 2023.

*4. 2019 Significant New Use Rule (SNUR) for discontinued uses of asbestos.*

In 2019, EPA promulgated a SNUR (84 FR 17345, April 25, 2019 (FRL-9991-33)) for

the manufacturing (including import) or processing of asbestos for use in adhesives, sealants, and

roof and nonroof coatings; arc chutes; beater-add gaskets; cement products; extruded sealant tape

and other tape; filler for acetylene cylinders; friction materials (with certain exceptions); high-

grade electrical paper; millboard; missile liner; packings; pipeline wrap; reinforced plastics;

roofing felt; separators in fuel cells and batteries; vinyl-asbestos floor tile; woven products; any

other building material; and any other use of asbestos that was not already prohibited under

TSCA or under evaluation in the TSCA Risk Evaluation for Asbestos Part 1: Chrysotile

Asbestos.

Activities that were under evaluation in the TSCA Risk Evaluation for Asbestos Part 1:

Chrysotile Asbestos were not subject to the SNUR since there was ongoing manufacturing

(including importing) or processing for those uses. Those activities not subject to the SNUR

were manufacturing (including importing) or processing for the use of chrysotile in asbestos

diaphragms; sheet gaskets; oilfield brake blocks; aftermarket automotive brakes/linings; other

vehicle friction products; and other gaskets. Because all the ongoing uses of asbestos identified

in the SNUR were for chrysotile, any use of crocidolite, amosite, anthophyllite, tremolite, or

actinolite would be considered a significant new use.

A person wishing to begin manufacturing, importing, or processing asbestos (including as

part of an article) for a significant new use must first submit a Significant New Use Notice

(SNUN) to EPA. Before any significant new use of asbestos begins, EPA must evaluate it for

potential risks to health and the environment and take any necessary regulatory action, which

Case 3:19-cv-03807-EMC  Document 101-1  Filed 07/10/23  Page 23 of 93

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

20

may include a prohibition.

   *5. TSCA Risk Evaluation for Asbestos.*

   Pursuant to TSCA section 6(b)(4)(A), EPA conducts risk evaluations to determine whether a chemical substance presents unreasonable risk of injury to health or the environment, without consideration of costs or non-risk factors, including an unreasonable risk to potentially exposed or susceptible subpopulations identified as relevant by the Agency, under the conditions of use. (15 U.S.C. 2605(b)(4)(A)).

   EPA is developing the TSCA Risk Evaluation on asbestos in two parts. In December 2020, EPA released the TSCA Risk Evaluation for Asbestos Part 1: Chrysotile Asbestos (Ref. 6), which determined that chrysotile asbestos presents an unreasonable risk of injury to health based upon the following conditions of use: processing and industrial use of chrysotile asbestos diaphragms in the chlor-alkali industry; processing and industrial use of chrysotile asbestos-containing sheet gaskets in chemical production; industrial use and disposal of chrysotile asbestos-containing brake blocks in the oil industry; commercial use and disposal of aftermarket automotive chrysotile asbestos-containing brakes/linings; commercial use and disposal of other chrysotile asbestos-containing vehicle friction products; commercial use and disposal of other asbestos-containing gaskets; consumer use and disposal of aftermarket automotive chrysotile asbestos-containing brakes/linings; and consumer use and disposal of other asbestos-containing gaskets.

   EPA initially focused the risk evaluation for asbestos on chrysotile asbestos as this is the only asbestos type that EPA believes is currently imported, processed, or distributed in the United States. EPA informed the public of this decision to focus on ongoing uses of asbestos and exclude legacy uses and associated disposals in the Scope of the Risk Evaluation for Asbestos

Case 3:19-cv-03807-EMC Document 101-1 Filed 07/10/23 Page 24 of 93

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

21

document, published in June 2017 (Ref. 14). However, in late 2019, the court in *Safer Chemicals, Healthy Families v. EPA*, 943 F.3d 397, 426-27 (9th Cir. 2019) held that EPA's Risk Evaluation Rule (82 FR 33726, July 20, 2017 (FRL-9964-38)) should not have excluded "legacy uses" (i.e., uses without ongoing or prospective manufacturing (including importing), processing, or distribution) or "associated disposals" (i.e., future disposal of legacy uses) from the definition of conditions of use, although the court did uphold EPA's exclusion of "legacy disposals" (i.e., past disposal). Following this court ruling, EPA continued development of the risk evaluation for ongoing uses of chrysotile asbestos and determined that the complete TSCA Risk Evaluation for Asbestos would be issued in two parts. The TSCA Risk Evaluation for Asbestos Part 1: Chrysotile Asbestos was released in December 2020, allowing the Agency to move into risk management for the unreasonable risk for ongoing uses of asbestos identified in Part 1.

EPA is currently conducting the TSCA Risk Evaluation for Asbestos Part 2: Supplemental Evaluation Including Legacy Uses and Associated Disposals of Asbestos. EPA intends to include in Part 2 of the risk evaluation the legacy uses and associated disposal of asbestos. For the purposes of scoping and risk evaluation, EPA has explained that its evaluation of asbestos includes the six fiber types listed in TSCA Title II (added to TSCA in 1986), section 202 (chrysotile (serpentine), crocidolite (riebeckite), amosite (cummingtonite-grunerite), anthophyllite, tremolite, or actinolite) and Libby amphibole asbestos (with tremolite, winchite, and richterite constituents), as well as asbestos present as an impurity in other substances. EPA expects that the one-time data collected from this rule will be used in TSCA Risk Evaluation for Asbestos Part 2 and will also inform risk management actions for asbestos under TSCA section 6(a).

*D. How will EPA use the information to be collected?*

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

22

Reported information will be used by EPA and other Federal agencies in considering potential actions on asbestos, including EPA's TSCA risk evaluation and risk management activities. Reporting may provide EPA with baseline information needed to assess whether certain "conditions of use" of asbestos drive unreasonable risk to human health or the environment under TSCA section 6(b). EPA must consider reasonably available information as part of the risk evaluation process under TSCA section 6(b), and as part of any subsequent risk management rulemaking efforts under TSCA section 6(a). Reported information would be useful in the risk management stage because EPA would consider potential risk management actions taking into account relevant information obtained through this rulemaking. Understanding the health risks of asbestos and protecting the public, including potentially exposed or susceptible subpopulations, from these risks is a priority for EPA.

As part of the risk evaluation process under TSCA section 6(b), EPA must determine whether asbestos presents an unreasonable risk of injury to health or the environment, without consideration of costs or other non-risk factors, including unreasonable risk to relevant potentially exposed or susceptible subpopulations, under the conditions of use. EPA must also use scientific information and approaches in a manner that is consistent with the requirements in TSCA for the best available science, and ensure decisions are based on the weight of scientific evidence. See TSCA section 26(h) and (i), 15 USC 2625(h) and (i). In order to follow this framework, EPA will take into consideration reasonably available information to inform the TSCA Risk Evaluation for Asbestos Part 2. Data collected by this rule could help to fill potential data gaps that EPA may have for asbestos that could better inform the Part 2 risk evaluation. Following risk evaluation, TSCA mandates that EPA take action if the Agency determines that asbestos presents unreasonable risk of injury to health or the environment. EPA needs to ensure

that sufficient information is reasonably available on the uses and trends of asbestos activities to develop a risk management rule that eliminates the unreasonable risk. The information collected in this rulemaking may be available to support the Part 2 risk evaluation, which is expected on or before December 1, 2024. Additionally, the information collected in this rulemaking will help inform any required risk management actions following the risk evaluation process.

For these reasons, EPA believes that the reporting and recordkeeping requirements in this rule are reasonable. See TSCA section 8(a)(1)(A).

## III. Summary of Public Comments on Proposed Rule

EPA received 27 comments on the proposed rule (87 FR 27060, May 6, 2022 (FRL-8632-02-OCSPP)). Of these, seven comments, from certain industry stakeholders and ADAO, were in whole or in part requests to extend the comment period, which EPA denied. Three of the comments were generally supportive of the proposed rulemaking, with the remainder of the comments being generally adverse. The comments and EPA responses, as well as a more thorough summary of the comments received, are presented in the Response to Public Comments document (Ref. 15) that is available in the docket for this rulemaking and summarized in this unit.

The majority of comments on the proposed rule addressed the economic analysis EPA developed for the proposed rule, with the majority of commenters stating EPA largely underestimated the burden the proposed rule would impose. Commenters also suggested the need for EPA to consider a threshold exemption to reporting, for which nearly all industry groups expressed support; and wholly exempting asbestos as an impurity in articles and/or naturally occurring chemical substances.

After considering the public comments, EPA made the following changes to the EA and

Case 3:19-cv-03807-EMC   Document 101-1   Filed 07/10/23   Page 27 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

24

rulemaking that are discussed in this unit.

*A. How did the estimated number of impacted entities change?*

In response to comments received, in its revised EA for the final rule, EPA estimates the total number of sites subject to this rulemaking to be 67,647 to 68,505, inclusive of all potentially affected manufactures and processors subject to this rule, with 186 to 1,044 firms reporting for 268 to 1,126 sites (Ref. 2). This is an increase of 168 to 1,026 firms and 241 to 1,099 sites from the estimate for the proposed rule, which did not quantify the number of entities potentially affected due to the potential presence of asbestos as an impurity. EPA maintains that use categories where the manufacturing or processing of asbestos (including asbestos mixtures) or articles containing asbestos is intended, known, or reasonably foreseen include chlor-alkali plants, sheeting gasket manufacturing, oilfield brake blocks, and aftermarket brakes. In response to comments that the number of estimated entities affected in the proposed rule and EA is unrealistically or unjustifiably low, as well as identification of industries that would be likely subject to the rulemaking, EPA has updated its EA for this rulemaking to estimate the number of affected entities potentially reporting for asbestos as in impurity (including impurities present in articles), which were not quantified in the analysis for the proposed rule. Details on affected entities are provided in the revised EA, which is available in the public docket for this rulemaking (Ref. 2).

*B. How did the compliance burden associated with the reporting standard change?*

In the proposed rule, EPA was unable to determine the number of potential manufacturers (including importers) or processors of asbestos as an impurity in bulk materials or articles that would report due to a lack of information on the extent to which asbestos occurs as an impurity in bulk materials or articles. The Agency also recognized that the universe of entities

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

25

that would be subject to the rule if finalized as proposed—particularly with regard to rule familiarization—might be larger than what the draft EA had estimated. Thus, EPA specifically sought public comment on the number of manufacturers (including importers) and processors who may be subject to the proposed rule due to the presence of asbestos impurities in their products, and on the related burden and cost for reporting. EPA sought comment on ways to minimize reporting burden on small manufacturers and processors pursuant to TSCA section 8(a)(5)(B), such as providing a reporting threshold based on factors including production volume or asbestos concentration. EPA received public comment providing additional information on instances of asbestos being present in very low concentrations in various products. Therefore, a threshold based on asbestos concentration or quantity would not satisfy EPA's data needs.

After careful consideration of comments received on the number of firms that would potentially be subject to the rule (EPA-HQ-OPPT-2021-0357-0052, EPA-HQ-OPPT-2021-0357-0049), EPA has, based in part on specific comment and in part on its judgment, revised its EA for the final rule to estimate the number of firms that may be subject to the rule because they potentially manufacture or process products containing asbestos as an impurity, and has revised the total estimated burden based on that number. At the time of the proposal, EPA estimated that 27 facilities that were intentionally manufacturing or processing products containing asbestos would be affected by the rule at an estimated cost of $99,496 (with a total social cost of $659,839 estimated for the rulemaking, including EPA burden). With the inclusion of facilities that manufacture or process products containing asbestos as an impurity, EPA estimates that the rule will affect 96,687 to 97,545 facilities (of which an estimated 268 to 1,126 will submit reports) at an estimated cost of approximately $319 million to $323 million (with a total social cost estimated to be approximately $320 million to $324 million). More detail on these estimates and

Case 3:19-cv-03807-EMC   Document 101-1   Filed 07/10/23   Page 29 of 93

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

26

related assumptions and uncertainties are provided in the revised EA for the final rule (Ref. 2).

The increase in estimated total cost from that in the proposed rule is not driven by an increased

compliance or reporting cost per entity, but is the result of identifying the larger number of

entities that will spend time determining whether they must report for asbestos present as an

impurity. Despite the increased social cost, EPA estimates that for products where asbestos is

used intentionally, the estimated average burden and cost per site will range from approximately

12 hours and $1,243 (for secondary processors or importers of articles or mixtures using Form

A) to 26 hours and $2,372 (for bulk importers and primary processors using Form B). For

products where asbestos occurs as an impurity, the estimated average burden and cost per site

will range from approximately 17 hours and $1,674 (for secondary processors or importers of

articles or mixtures using Form A) to 39 hours and $3,451 (for bulk importers and primary

processors using Form B) and 244 sites are estimated to submit reports. The increased estimate

of social costs in the EA of the final rule reflects the result of the notice and comment process.

These costs reflect an updated analysis of entities subject to the rule, based on public comments

(EPA-HQ-OPPT-2021-0357-0052, EPA-HQ-OPPT-2021-0357-0049) received on the proposed

rule, rather than substantive changes to proposed reporting requirements.

*C. What changes did EPA make to persons subject to the rule?*

TSCA Section 8(a)(5)(B) requires EPA to minimize, to the extent feasible, the cost of

compliance for small manufacturers and processors, and EPA recognizes that it can alleviate

some burden while continuing to address information needs and ensure that the information

being sought is reported, per the requirements under Section 8(a)(5)(C). While all known or

reasonably ascertainable information on asbestos is of interest to EPA, the Agency recognizes

that ultimate parent companies with comparatively low sales may not have information on

Case 3:19-cv-03807-EMC   Document 101-1   Filed 07/10/23   Page 30 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

27

asbestos to submit to EPA and such information is anticipated to be of much lesser magnitude than submissions provided by entities with greater sales. EPA received comment (EPA-HQ-OPPT-2021-0357-0046) that large businesses are more likely than small businesses to have resources dedicated to collecting information and tracking supply chains. Small businesses are also more likely to have fewer products or COUs on which to report. Viewed together, these factors warrant alleviating the burden of rule familiarization and reporting on some small businesses for purposes of this rule. Further, EPA does not have information to suggest that any of the smallest entities would have reasonably ascertainable asbestos information on which to base their reporting or that they would have information on unique COUs. Such entities, then, would incur rule familiarization and compliance determination burden without providing the benefit of submitting data on asbestos. Thus, providing a sales threshold alleviates the burden of this rule from entities least positioned to report to the rule. EPA, therefore, has decided to set an annual sales threshold, when combined with those of their ultimate parent company (if any), of $500,000, below which manufacturers and processors are not subject to the requirements of this rulemaking. This figure represents a sales threshold where most entities throughout industry sectors that might report on manufacture or processing of asbestos to this rule remain regulated (i.e., subject to reporting requirements). EPA estimates that 33,000 to 34,000 otherwise potentially affected businesses are below the $500,000 sales volume threshold and thus are not subject to this rulemaking, with the result that the $500,000 reporting threshold saves small businesses a total of $138 million to $140 million.

While EPA estimates that between 186 and 1,044 firms will meet the requirements to submit a report, approximately 67,000 firms with sales of $500,000 or more will incur average costs of nearly $5,000 for rule familiarization and compliance determination in order to

determine that they do not need to report. Thus, only 0.3% to 1.5% of large firms incurring costs due to the rule are estimated to provide data to EPA. Given that smaller businesses may have fewer resources than large businesses for collecting information and tracking supply chains, an even smaller percentage of the 33,000 to 34,000 firms with revenues under $500,000 would be required to report. Since EPA does not have information to suggest that the smallest entities would have unique information on asbestos COUs on which to report, the $500,000 reporting threshold strikes the appropriate balance between collecting information on asbestos uses and exposures while minimizing, to the extent feasible, the cost of compliance for small manufacturers and processors. Thus, the reporting threshold provides burden relief for companies where reporting is least anticipated—based on EPA's analysis and expertise—while minimizing the risk that the Agency is deprived access to known or reasonably ascertainable information on asbestos.

This change also aligns with the requirement under TSCA Section 8(a)(5)(B) to minimize, to the extent feasible, the cost of compliance for small manufacturers and processors. Additionally, this change aligns with TSCA Section 8(a)(5)(C), which directs EPA to apply reporting obligations to those persons likely to have information relevant to the effective implementation.

Accordingly, based on EPA's expertise, the Agency anticipates that making manufacturers and processors with annual sales greater than or equal to $500,000 (at the ultimate parent company level) subject to the rulemaking ensures that EPA receives reporting on each industry sector impacted by the rule, thereby helping to ensure that the Agency receives information on as many conditions of use as possible involving asbestos. For purposes of this rulemaking, EPA is not aware of instances where entities in a given industry sector with annual

Case 3:19-cv-03807-EMC Document 101-1 Filed 07/10/23 Page 32 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
29

sales less than $500,000 (combined with their parent company) are likely to have information

regarding asbestos that other entities (i.e., those with greater than or equal to $500,000 in annual

sales) in the same sector would not be able to provide pursuant to the reporting standard. Further,

EPA did not receive any comments on the proposed rule that identified any unique aspects of the

smallest entities, thus based on EPA's analysis and expertise, and for the reasons identified

above, EPA does not believe that such entities are likely to have information on their

manufacturing or processing of asbestos.

*D. How did 40 CFR 704.180(e) change for reporting information?*

In response to comments received, EPA added in 40 CFR 704.180(e) an explicit

reference to 704.180(d) to clarify that persons exempted in 704.180(d) (i.e., persons who

manufacture or propose to manufacture a non-isolated intermediate, persons who manufacture or

processes or propose to manufacture or process asbestos only in small quantities for research and

development, persons who are small manufacturers and processors of Libby asbestos, and

persons who manufacture or proposes to manufacture asbestos solely as a byproduct) are not

required to report.

*E. How did the definition of and use of "bulk materials containing asbestos" change?*

EPA has changed the appearance of "bulk materials containing asbestos" and its

variations to "bulk materials containing asbestos, including as an impurity" and its variations

throughout the preamble and regulatory text.

*F. How did the references to talc and vermiculite change?*

EPA maintains that talc and vermiculite are some examples of the bulk commodities that

may contain asbestos as an impurity. However, based on comments received, EPA recognizes

that its repeated identification of these specific bulk materials and solely these materials as

examples of such bulk commodities could be misconstrued and lead to the belief that asbestos impurities in talc and vermiculite are both unique to and common in these materials. As such, EPA has changed the phrase to read "bulk materials where asbestos can be found as an impurity (e.g., talc, vermiculite, and other substances)" on first reference only and "bulk materials where asbestos can be found as an impurity" thereafter.

## IV. Summary of Reporting and Recordkeeping Requirements in the Final Rule

*A. What chemical substances are reportable under this rule?*

EPA is requiring the reporting of information on specific asbestos types, or if specific information is not known or reasonably ascertainable, reporting on "asbestos" as it is more generally listed on the TSCA Inventory. EPA is also requiring the reporting of information related to asbestos as it is manufactured (including imported) or processed in bulk, as a component of a mixture, in an article or product, including as an impurity. This rule broadly covers asbestos and includes asbestos in the above non-exhaustive list of examples.

*1. Asbestos types.*

EPA is seeking manufacturing (including importing) and processing information associated with the following different fibrous asbestos types, and therefore is requiring that reporting be completed for each of the types, to the extent that the information is known or reasonably ascertainable:

• Asbestos – CASRN 1332-21-4;

• Chrysotile – CASRN 12001-29-5;

• Crocidolite – CASRN 12001-28-4;

• Amosite – CASRN 12172-73-5;

• Anthophyllite – CASRN 77536-67-5;

Case 3:19-cv-03807-EMC   Document 101-1   Filed 07/10/23   Page 34 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

31

• Tremolite – CASRN 77536-68-6;

• Actinolite – CASRN 77536-66-4; and

• Libby amphibole asbestos – CASRN not applicable (mainly consisting of tremolite [CASRN 77536-68-6], winchite [CASRN 12425-92-2], and richterite [CASRN 17068-76-7]). If a specific asbestos type is unknown, a submitter will provide information under the general asbestos form (CASRN 1332-21-4). See Unit II.B. for more information about what is considered asbestos.

*2. Asbestos as an impurity.*

Impurity means a chemical substance which is unintentionally present with another chemical substance as per 40 CFR 704.3. Asbestos may occur naturally as an impurity in other products such as talc, vermiculite, and potentially other substances. These products are distributed and used in commerce in the United States. For example, talc, a hydrous magnesium silicate mineral, is used in a wide variety of applications. Talc deposits can contain asbestos as an impurity (Ref. 16). If all other reporting conditions are met (i.e., the person is not exempted and has annual sales above the reporting threshold), these products are subject to reporting under this rule. EPA is collecting data on asbestos as an impurity because EPA lacks data on the extent to which asbestos as an impurity occurs in products under TSCA jurisdiction that are currently being manufactured (including imported) or processed. In particular, data on asbestos as an impurity could better inform the TSCA Risk Evaluation for Asbestos Part 2 where EPA will determine and then evaluate the relevant conditions of use of asbestos.

*3. Articles containing asbestos.*

This rule requires reporting on articles containing asbestos (including as an impurity). An "article" is defined in 40 CFR 704.3 as "a manufactured item which: (1) is formed to a specific

Case 3:19-cv-03807-EMC   Document 101-1   Filed 07/10/23   Page 35 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
32

shape or design during manufacture; (2) has end-use function(s) dependent in whole or in part upon its shape or design during end use; and (3) has either no change of chemical composition during its end use or only those changes of composition which have no commercial purpose separate from that of the article, and that result from a chemical reaction that occurs upon end use of other chemical substances, mixtures, or articles; except that fluids and particles are not considered articles regardless of shape or design." EPA will collect more data on imported articles containing asbestos; these data could inform the TSCA Risk Evaluation for Asbestos Part 2 where EPA will determine and then evaluate the relevant conditions of use of such articles containing asbestos. Articles included in the TSCA Risk Evaluation for Asbestos Part 1 : Chrysotile Asbestos were limited to brake blocks for use in the oil industry, rubber sheets for gaskets used to create a chemical-containment seal in the production of titanium dioxide, certain other types of preformed gaskets, and some vehicle friction products (Ref. 17); EPA is interested in identifying if there are other articles containing asbestos or if there is information about specific types of asbestos in these articles.

 *4. Asbestos that is a component of a mixture.*

 Under TSCA section 3(10) (15 USC 2602(10)), the term "mixture" is defined as "any combination of two or more chemical substances if the combination does not occur in nature and is not, in whole or in part, the result of a chemical reaction; except that such term does include any combination which occurs, in whole or in part, as a result of a chemical reaction if none of the chemical substances comprising the combination is a new chemical substance and if the combination could have been manufactured (including imported) for commercial purposes without a chemical reaction at the time the chemical substances comprising the combination were combined." Under this reporting rule, EPA will collect data on asbestos in circumstances

where it is a component of a mixture to inform the TSCA Risk Evaluation for Asbestos Part 2. In the Part 2 risk evaluation, EPA will determine the relevant conditions of use of asbestos.

Legislative history affirms that EPA can conduct risk evaluations on a chemical substance when the substance is present as a component of a mixture (See Senate Congressional Record, S3511, June 7, 2016): "In section 6(b) of TSCA, as amended by the Frank R Lautenberg Chemical Safety for the 21st Century Act, EPA is directed to undertake risk evaluations on chemical substances in order to determine whether they pose an unreasonable risk to health or the environment. The definition of 'conditions of use' plainly covers all uses of a chemical substance, including its incorporation in a mixture, and thus would clearly enable and require, where relevant, EPA to evaluate the risks of the chemical substance as a component of a mixture."

## B. Will small businesses need to report?

Although TSCA section 8(a)(1) provides an exemption for small manufacturers (including importers) and processors, TSCA section 8(a)(3) enables EPA to require small manufacturers (including importers) and processors to report pursuant to TSCA section 8(a) with respect to a chemical substance that is the subject of a rule proposed or promulgated under TSCA sections 4, 5(b)(4), or 6, an order in effect under TSCA sections 4 or 5(e), a consent agreement under TSCA section 4, or relief that has been granted under a civil action under TSCA sections 5 or 7. Six of the asbestos types subject to this rule (chrysotile, crocidolite, amosite, anthophyllite, tremolite, and actinolite) are subject to a TSCA section 6 rule under the Asbestos Ban and Phaseout rule of 1989 (Ref. 1) (40 CFR 763.160 *et seq*) and therefore these types of asbestos may not be eligible for a small manufacturer (including importer) or processor exemption. Although most of the original ban was overturned in 1991 by the Fifth Circuit Court of Appeals,

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

34

a portion of the section 6 rulemaking remains in effect (*See* 40 CFR 763.160 *et seq*.). Libby amphibole asbestos, however, is not subject to an applicable proposed or promulgated rule under TSCA sections 4, 5(b)(4), or 6; an order under TSCA sections 4 or 5(e); or a consent agreement under TSCA section 4; and is not the subject of relief that has been granted under a civil action under TSCA section 5 or 7. Therefore, small manufacturers and processors of Libby amphibole asbestos continue to be exempted from reporting.

EPA's experience with the TSCA Risk Evaluation for Asbestos Part 1: Chrysotile Asbestos indicates that small businesses (as defined by the Small Business Administration's size standards) are involved in certain identified conditions of use associated with asbestos. For some conditions of use, EPA identified a single business engaged in each of the activities and, in two cases, the companies were small businesses. In addition, EPA identified multiple conditions of use for which it was unable to identify a single company engaged in the condition of use. Because of the low number of companies found to be involved in specific conditions of use, it is possible that companies associated with other conditions of use that need to be considered in the TSCA Risk Evaluation for Asbestos Part 2 are small businesses.

Because EPA has much less information on the activities of small businesses, the Agency is concerned that certain conditions of use for which the Agency lacks detailed information may be conducted largely or entirely by small businesses. Given EPA's experience and the petitioners' concerns (Refs. 11 and 12), the Agency believes that exempting all small businesses from reporting may exclude most or all of the reporting for some conditions of use which could severely hinder EPA's risk evaluation or risk management activities. As a result, EPA is requiring that small businesses—small manufacturers (including importers) and processors of asbestos and asbestos mixtures (other than Libby amphibole asbestos)—will need to maintain

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

35

records and, as necessary, report under this action.

Based on comments received, EPA determined that it can alleviate some burden while continuing to address information needs and ensure that the information being sought is reported. EPA, therefore, has decided to set an annual sales threshold, when combined with those of their ultimate parent company (if any) of $500,000, below which manufacturers (including importers) and processors are not subject to the requirements of this rulemaking. The burden reduction includes eliminating rule familiarization, form completion, CBI substantiation, electronic reporting, and recordkeeping requirements for such entities. This change aligns with the requirement under TSCA Section 8(a)(5)(B) to minimize, to the extent feasible, the cost of compliance for small manufacturers (including importers) and processors while ensuring that, pursuant to TSCA Section 8(a)(1), the submission of reports and maintenance of records is necessary for the effective enforcement of TSCA. EPA believes that making manufacturers (including importers) and processors with annual sales equal to or greater than $500,000 (at the ultimate parent company level) subject to the rulemaking ensures that EPA receives reporting on each industry sector impacted by the rule, thereby helping to ensure that the Agency receives information on as many COUs as possible involving asbestos. EPA is not aware of instances where entities in a given industry sector with sales lower than $500,000 are likely to have information that other entities (i.e., those with equal to or greater than $500,000 in sales) in the same sector would not be able to provide pursuant to the reporting standard. This aligns with the requirement under TSCA Section 8(a)(5)(C) to apply, to the extent feasible, reporting obligations to those persons likely to have information relevant to the effective implementation of Title 1 of TSCA.

EPA believes a threshold based on sales will ensure that representative entities within

Case 3:19-cv-03807-EMC   Document 101-1   Filed 07/10/23   Page 39 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
36

each industry sector will provide information to EPA regarding their knowledge of asbestos in their products as required (i.e., when information on the presence or quantity of asbestos in their products is known to or reasonably ascertainable by them). For sectors with varying product lines, EPA expects that entities with sales equal to or greater than $500,000 will generally have more products and thus will fairly represent what is known about the presence of asbestos in such sectors for purposes of providing information to the Agency. This sales-based threshold also serves as a proxy for a volume-based threshold (i.e., reporting contingent on manufacturing or processing more than a certain quantity during any year of the reporting period) or a quantity- or concentration-based (i.e., de minimis) threshold, which many commenters supported. EPA recognizes that certain companies with sales less than $500,000 may possess relevant information; however, the Agency anticipates that equivalent information would be known to or reasonably ascertainable by entities with greater sales, given what commenters (EPA-HQ-OPPT-2021-0357-0050, EPA-HQ-OPPT-2021-0357-0051) have stated to be a general lack of information being provided by large manufacturers (including importers) and suppliers on the presence of asbestos in materials provided to smaller downstream entities. Therefore, EPA would receive information on asbestos involving the given sector, which will inform the Agency's activities under TSCA section 6, as well as increase information on asbestos that is generally available. Further, EPA's analysis of industry sectors indicates that this threshold will ensure that representative sites of every particular sector are subject to the rulemaking requirements such that COUs unique to any sector(s) are included.

As noted previously, EPA has determined that it needs certain information from small businesses for the effective implementation of TSCA, therefore is not exempting all small businesses from this rule. The smallest annual sales-based small business size standard is $2.25

Case 3:19-cv-03807-EMC  Document 101-1  Filed 07/10/23  Page 40 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
37

million and the largest is $47 million (13 CFR 121.201). Therefore, while the $500,000 annual sales threshold will limit information collected from the smallest subset of these companies, whom EPA does not anticipate would be likely to know or reasonably ascertain that they have manufactured or processed asbestos, it does not broadly exclude all small businesses. EPA anticipates larger firms are more likely to know or reasonably ascertain that they have manufactured or processed asbestos.

EPA will use the small manufacturer (including importer) definition already established at 40 CFR 704.3. Thus, any entity manufacturing (including importing) Libby amphibole asbestos is considered a small manufacturer and exempt from reporting if it meets either of these two standards (as adjusted by an inflation index):

• Total sales during the most recent year of the reporting period, combined with those of the parent company, domestic or foreign (if any), are less than $120 million and the annual production and importation volume of that chemical substance (i.e., asbestos) does not exceed 100,000 pounds at any individual plant site. If the annual production and importation volume of the chemical substance (i.e., asbestos) at any individual site owned or controlled by the submitter is greater than 100,000 pounds, the submitter is required to report for that particular site unless it qualifies as small under the following standard.

• Total sales during the most recent year of the reporting period, combined with those of the parent company, domestic or foreign (if any), are less than $12 million regardless of the quantity of asbestos produced or imported.

The definition for small manufacturer (including importer) in the general TSCA section 8 regulations, as written in the *Small manufacturer* and *Small government* definitions (40 CFR 704.3), applies to domestic manufacturers and importers, but does not cover processors.

Case 3:19-cv-03807-EMC   Document 101-1   Filed 07/10/23   Page 41 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
38

Therefore, EPA is using a definition for small processors functionally identical to that established in 40 CFR 704.20 - *Chemical substances manufactured or processed at the nanoscale* (Ref. 18) which was prescribed after consultation with SBA. Likewise, in proposing this modified definition for this one-time reporting rule, EPA provided notice and comment on the criteria for small processors and consulted with the SBA in accordance with TSCA section 8(a)(3)(B). Comments received and responses thereof are provided in Response to Public Comments document (Ref. 15).

EPA is finalizing the slightly modified version of the nanoscale definition for small processors because it is most similar to the general small manufacturing (including importing) definition already promulgated. The definition for this rulemaking states: "Small processor means any processor whose total annual sales, when combined with those of its parent company (if any), are less than $12 million." Note that in the nanoscale rule, the total annual sales threshold is $11 million. EPA increased the threshold for this asbestos rulemaking to $12 million to align with the non-volume portion of the TSCA small manufacturer definition in 40 CFR 704.3, which was updated in 2020. The small manufacturer definition has a second standard that exempts companies on a chemical-by-chemical volume basis (i.e., 100,000-pound threshold when company sales are less than $120 million), thus exempting small manufacturers for some chemicals but not for others. The second standard is not appropriate to include in the small processor definition because the amount of asbestos in products may vary drastically. It is also not appropriate because EPA is not basing reporting requirements on volumes for this rule. Thus, the volume of asbestos is less applicable as a measure than sales.

*C. What is the reporting standard?*

This rule uses the reporting standard used for certain other TSCA section 8(a) reporting

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

requirements, including CDR. This standard requires that manufacturers (including importers) and processors report information to the extent that the information is known to or reasonably ascertainable by the manufacturer (including importer) or processor (see TSCA section 8(a)(2)). "Known to or reasonably ascertainable by" includes "all information in a person's possession or control, plus all information that a reasonable person similarly situated might be expected to possess, control, or know" per 40 CFR 704.3. This reporting standard requires reporting entities to evaluate their current level of knowledge of their manufactured products (including imports) or processed products, as well as to evaluate whether there is additional information that a reasonable person, similarly situated, would be expected to know, possess, or control. This standard carries with it an exercise of due diligence, and the information-gathering activities that may be necessary for manufacturers (including importers) and processors to achieve this reporting standard may vary from case to case.

This standard requires that submitters conduct a reasonable inquiry within the full scope of their organization (not just the information known to managerial or supervisory employees). This standard may also entail inquiries outside the organization to fill gaps in the submitter's knowledge. Such activities may, though not necessarily, include phone calls or email inquiries to upstream suppliers or downstream users or employees or other agents of the manufacturer (including importer) or processor, including persons involved in the research and development, import or production, or marketing of asbestos. Examples of types of information that are considered to be in a manufacturer's (including importer's) or processor's possession or control, or that a reasonable person similarly situated might be expected to possess, control, or know include: files maintained by the manufacturer (including importer) or processor such as marketing studies, sales reports, or customer surveys; information contained in standard

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

40

references showing use information or concentrations of chemical substances in mixtures, such as a Safety Data Sheet (SDS) or a supplier notification; and information from CAS or from Dun & Bradstreet (D-U-N-S). This information may also include knowledge gained through discussions, conferences, and technical publications.

EPA has provided CDR reporting guidance materials on this reporting standard, including hypothetical examples of applying the "known to or reasonably ascertainable by" reporting standard in the context of collecting processing and use data for CDR, which would be instructive for reporting under this rule as well (Ref. 9). Therefore, EPA anticipates some submitters under this rule will be familiar with this reporting standard, and resources are available to support those submitters who may not be familiar with the standard. In response to public comments, EPA will provide such guidance and a compliance guide.

EPA acknowledges that it is possible that a manufacturer (including importer) or processor, particularly an importer of articles containing asbestos (including as an impurity), may not have knowledge that they have imported asbestos and thus not report under this rule, even after they have conducted their due diligence under this reporting standard as described previously. Such an importer should document its activities to support any claims it might need to make related to due diligence.

In the event that a manufacturer (including importer) or processor does not have actual data (*e.g.*, measurements or monitoring data) to report to EPA, the manufacturer (including importer) or processor may make "reasonable estimates" of such information. "Reasonable estimates" may rely, for example, on approaches such as mass balance calculations, emissions factors, or best engineering judgment. See section A.2.2 of the Response to Comments document for further discussion of the reporting standard.

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

41

*D. When is reporting required?*

This rulemaking results in a one-time reporting obligation. EPA requires reporting for persons who have manufactured (including imported) or processed asbestos, including as an impurity in bulk materials or products, at any time during the four complete calendar years prior to the effective date of the final rule. The four calendar years are 2019 to 2022. These entities will report to EPA during a three-month submission period, which will begin six months following the effective date of the final rule. Therefore, manufacturers (including importers) and processors have up to nine months following the effective date of this final rule to collect and submit all required information to EPA.

EPA believes that providing six months between the effective date of the rule and the start of the submission period allows sufficient time for both the Agency to finalize the reporting tool and for submitters to familiarize themselves with the rule and compile the required information. Since this TSCA section 8(a)(1) reporting rule results in the collection of similar information to that collected under CDR, EPA anticipates some submitters will be familiar with the types of information requested and how to report. EPA received several comments on the proposed rule requesting that the reporting deadline be extended by as much as 18 months. EPA evaluated these comments and determined that three months is adequate time for submissions, in addition to the six-month period between the effective date and the start of the submission period. This period (i.e., reporting due by nine months after the effective date of the rule) deadline is commensurate with the estimated time needed to obtain and report the data that this rulemaking requires. Further, ensuring prompt reporting of these data is necessary to inform EPA's TSCA risk evaluation and risk management activities involving asbestos.

*E. How is information being reported?*

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

42

EPA is establishing different reporting requirements based on a two-part knowledge-based reporting approach in order to obtain as complete a picture as possible of the manufacturing (including importing), processing, and use of asbestos. Because asbestos can be included in small quantities in some products, a threshold concentration for reporting might eliminate much of the information that may be useful to support EPA's TSCA risk evaluation and risk management efforts. Therefore, EPA is requiring reporting whenever the presence of asbestos is known or reasonably ascertainable.

However, EPA is also aware that there may be circumstances under which a manufacturer (including importer), or processor is unable to provide a quantity of the asbestos in their products because the percentage of asbestos in their products is not known to or reasonably ascertainable by them. For those situations, EPA is providing a short form (Form A) for attestation purposes. For other situations, submitters who can determine or estimate the quantity will provide more detailed information in the full form (Form B). EPA anticipates that most submitters would know or be able to estimate the quantity of the asbestos and would complete the full form. Because the reporting this rulemaking requires will be electronic, both Form A and Form B are integrated into a single reporting tool application; preparers will be prompted to provide additional Form B data when they indicate they know or are able to provide a reasonable estimate of the quantity of asbestos.

*1. Determining the need to report using Form A.*

Submitters who are aware of asbestos in their product, but who are unable to determine or estimate the quantity manufactured (including imported) or processed, will use Form A to provide a subset of the information required on Form B. This subset of information consists of information related to manufacturing (including importing) or processing asbestos, including as

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

43

an impurity, in an article, or as a component of a mixture, and information about the employees involved with such activities.

One of the goals of this rule is to ensure EPA has a complete picture of known or reasonably ascertainable information regarding of asbestos manufacturing (including importing) and processing in the United States. Therefore, EPA is requiring a reporting approach that will ensure that even circumstances where asbestos exists in unknown quantities are captured. Some entities manufacturing (including importing) or processing asbestos as a component of a mixture or articles containing asbestos (including as an impurity) (e.g., the importers of articles), may be aware of asbestos in their products but unable to determine or estimate the quantity of the asbestos for reporting purposes. Therefore, EPA is including the short form (Form A) for such entities that are aware of presence of asbestos in their products, but unable to determine (or estimate) the quantity manufactured (including imported) or processed of asbestos to report.

For a more detailed discussion of the data elements, please see Unit IV.F. EPA anticipates that Form A will be the less common option of the two reporting forms.

*2. Determining the need to report using Form B.*

EPA requires that if a quantity of asbestos in a product is known to or reasonably ascertainable by the submitter, then the submitter must provide the more detailed reporting information required by Form B. For example, if submitters are able to determine that their quantity of asbestos is close to a given quantity, they are required to report that quantity using Form B.

Form B requires specific quantity information per asbestos type, more detailed processing information, and employee information (including employee exposure information). For a more detailed discussion on specifics included in Form B, see Unit IV.F.

Case 3:19-cv-03807-EMC Document 101-1 Filed 07/10/23 Page 47 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023. It is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
44

*F. What information will be reported in Form A and Form B?*

EPA is requiring certain information to be reported in either Form A or Form B. Unit IV.E. describes how to choose which form to use for reporting. This unit provides a more in-depth overview of the information to be reported. Each form has sections about respondent identification, mined (i.e., extracted) or milled (e.g., crushed, grinded) bulk asbestos and bulk material containing asbestos, imported bulk asbestos, primary processor production, secondary processor production, importation of mixtures, and importation of articles. Form A is a subset of Form B. If a data element is included in Form B only, it is indicated by "(Form B only)" following the name of the data element.

*1. Respondent identification information.*

EPA is requiring that both Form A and B include information associated with identifying the respondent company and site and information about contacts at the company or site who can respond to any clarifying or other follow up questions from EPA. Specifically, EPA is requiring that submitters report the following information (40 CFR 704.180(e)(3)):

• U.S. Parent Company Information;

• Authorized Official Contact Information;

• Technical Contact Information; and

• Site Information (including NAICs codes and total number of employees at site).

In addition, submitters will identify the activity for which they are reporting, selecting from the list provided in 40 CFR 704.180(e)(4)(i). If more than one activity applies, the submitter will indicate all that apply. Each activity and the associated data elements are described in the remainder of this Unit.

*2. Mined, milled, or imported bulk asbestos or bulk materials containing asbestos,*

Case 3:19-cv-03807-EMC   Document 101-1   Filed 07/10/23   Page 48 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
45

*including as an impurity.*

An asbestos mine or mill is an entity that either mines or mills asbestos-containing ore.
Mined (i.e., extracted) asbestos-containing ore is further milled to produce bulk asbestos. Milling
involves the separation of the fibers from the ore, grading and sorting the fibers, or fiberizing
crude asbestos ore. An importer of bulk asbestos imports bulk asbestos into the customs territory
of the United States. EPA anticipates that companies who are mining, milling, or importing bulk
asbestos will report using Form B, because the volume of asbestos is likely known to or
reasonably ascertainable by them.

For companies that are mining, milling, or importing bulk materials where asbestos can
be found as an impurity, EPA anticipates that they would report using either Form A or Form B,
based upon their knowledge of the quantity of asbestos in their bulk material. EPA does not
anticipate that asbestos is produced without a separate commercial intent during the manufacture,
processing, use, or disposal of another chemical substance or mixture (see 40 CFR 704.3). Thus,
EPA has not lifted the general reporting exemption for persons who manufacture, import, or
proposes to manufacture or import asbestos solely as a byproduct (see 40 CFR 704.5(b)).

Specifically, EPA is requiring that sites involved in mining, milling, or importing
asbestos or bulk materials containing asbestos, including as an impurity, report certain
information associated with those activities, as listed in 40 CFR 704.180(e)(4)(ii) and (iii), and
(e)(5). All submitters will report the applicable asbestos type associated with the mining, milling,
or importing activity. Submitters who import asbestos or bulk materials containing asbestos,
including as an impurity into the United States, but do not receive it at their physical location
(i.e., the material is instead received directly by a customer) can indicate such material was never
physically present at the site of the importer, if appropriate.

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

46

*a. Bulk asbestos.* In addition, EPA is requiring that sites involved in mining, milling, or importing bulk asbestos, for each asbestos type and for each year, report the quantity of asbestos and the disposition of asbestos. Table 3 in 40 CFR 704.180(e)(4)(ii)(B) provides a list of dispositions from which to select, including: used on site, sent to another U.S. site, exported, or disposed of. EPA is requiring that a site selecting "Disposed of within the U.S." provides additional explanation to indicate the quantity and type of disposal (e.g., disposed in a landfill).

*b. Bulk materials containing asbestos, including as an impurity.* EPA is requiring that sites involved in mining, milling, or importing bulk materials containing asbestos, including as an impurity, also report the type of bulk material that is manufactured (including imported) or processed, and for each type of bulk material and year, report:

• The quantity of bulk material quantity by weight (Form B only);

• The percentage of asbestos in the bulk material (Form B only);

• The most specific types of asbestos. If a specific asbestos type is unknown, a submitter will provide information under the general asbestos form (CASRN 1332-21-4) (Form B only);

• Information describing how the amount of asbestos in the bulk material is known (Form B only); and

• The disposition of the bulk material as described in Unit IV.F.2.a.

*3. Primary processors of asbestos (processing bulk material, other than milling), including as an impurity.*

A primary processor starts with bulk asbestos or bulk materials containing asbestos, including as an impurity and makes a mixture that contains asbestos as a component. A primary processor may simply mix or repackage different types or sizes of fibers and then sell that product. Mixtures that contain asbestos are products to which asbestos has been intentionally

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

added and which can be used or processed further and incorporated into other products. For example, asbestos cement, asbestos paper, and asbestos-reinforced plastics are instances where asbestos is contained in a mixture. Primary processors are defined in the 40 CFR 704.180(a), a definition adapted from the definition of primary processor in the 1982 *Asbestos Reporting Requirements* Rule (see Unit II.C.1.).

EPA anticipates that primary processors starting with bulk asbestos are more likely to report using Form B while those starting with bulk materials containing asbestos, including as an impurity, may report using either Form A or Form B.

EPA is requiring that primary processors report, for each year, the total quantity of asbestos processed (Form B only) and the end product type (selected from Table 4 in 40 CFR 704.180(e)(4)(iv)(B)). For each product type, report by year:

• The most specific types of asbestos (Form B only);

• The total annual production quantity of end product, using the unit of measure as listed in Table 4 in 40 CFR section 704.180(e)(4)(iv)(B);

• The percentage of asbestos in the end product (Form B only);

• If the asbestos content is an impurity, how the presence, amount, and type of asbestos is known (i.e., do you have test results (provide the results), how often is testing conducted, other methods for identifying the asbestos content); and

• The disposition of the end product (Form B only) as described in Unit IV.F.2.a.

*4. Secondary processor production (processing asbestos when a component of a mixture and articles containing asbestos, including as an impurity).*

Secondary processors are those who start with asbestos when it is a component of a mixture and incorporate the mixture into their own products. For example, persons who fabricate

Case 3:19-cv-03807-EMC  Document 101-1  Filed 07/10/23  Page 51 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
48

asbestos cement sheet by cutting the sheet to make an electrical switch board, or persons who make garments by cutting an asbestos-containing textile, are secondary processors. Secondary processors are defined in 40 CFR 704.180(a), a definition adapted from the definition of primary processor in the 1982 *Asbestos Reporting Requirements Rule* (see Unit II.C.1.).

EPA anticipates that secondary processors may report using either Form A or Form B. EPA is requiring that secondary processors report, for each year, the total quantity of asbestos processed (Form B only) and the end product type (selected from Table 4 in 40 CFR 704.180(e)(4)(iv)(B)). For each product type, report by year:

• The most specific types of asbestos and the quantity of asbestos (Form B only);

• The total annual production quantity of end product, using the unit of measure as listed in Table 4 in 40 CFR704.180(e)(4)(iv)(B);

• The percentage of asbestos in the end product (Form B only);

• If the asbestos content is an impurity, how the presence, amount, and type of asbestos is known (i.e., do you have test results (provide the results), how often is testing conducted, other methods for identifying the asbestos content); and

• The disposition of the end product (Form B only) as described in Unit IV.F.2.a.

*5. Importation of asbestos as a component of a mixture or article that contains asbestos, including as an impurity.*

An importer of asbestos contained in a mixture or article that contain asbestos, including as an impurity, imports these substances into the customs territory of the United States.

EPA anticipates that an importer of articles and/or products may report using either Form A or Form B. EPA is requiring that importers report, for each year, the total quantity of asbestos processed (Form B only) and the imported product type (selected from Table 4 in 40 CFR

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

704.180(e)(4)(iv)(B)). For each product type, report by year:

• Whether the imported product including asbestos is contained in a mixture or a part of an article;

• The most specific types of asbestos and the quantity of each asbestos type (Form B only);

• The total annual import quantity of the imported product, using the unit of measure as listed in Table 4 of 40 CFR 704.180(e)(4)(iv)(B);

• The percentage of asbestos in the imported product (Form B only);

• Information about how the presence, amount, and type of asbestos is known (i.e., do you have test results (provide the results), how often is testing conducted, other methods for identifying the asbestos content); and

• The disposition of the imported product (Form B only) as described in Unit IV.F.2.a. Submitters who import asbestos as a component of a mixture or an article that contains asbestos, including as an impurity can indicate such material was never physically present at the site of the importer, if appropriate.

*6. Employee information.*

For each activity reported, EPA is requiring that submitters also report certain information about the number of employees involved with the activity. Specifically, EPA is requiring that submitters report the number of employees associated with the activity, whether personal protective equipment was used and, if yes, the type of equipment used, and any workplace exposure measurement assessments such as monitoring data. When supplying the measurement assessment data, also include information about how the assessment was conducted and other explanations to help EPA better understand and use the data.

*G. Did EPA consider additional data elements for the final rule?*

When evaluating which data elements to include in this final rule, EPA also considered potentially requiring reporting on additional information related to current employee exposures, wastewater treatment, disposal information, and customer sites. EPA specifically sought comment on if additional data elements should be required, and the majority of commenters were not supportive of additional data element. EPA chose not to include these additional data elements in this final rule in the interest of maintaining a manageable level of burden for reporting entities. EPA also believes that the data elements described in Unit IV.F. will provide sufficient information for use by EPA and other Federal agencies in potential actions involving asbestos, including EPA's TSCA risk evaluation and risk management activities.

*1. Wastewater discharge and waste disposal data.*

EPA considered collecting information related to asbestos or asbestos-containing discharges, including releases, wastes, and disposal data. These data included a description of any discharges, such as to water or to off-site public treatment facilities, and descriptions of solids disposal, such as to land-based facilities. Wastewater related information included volumes of wastewater, amount of asbestos in the wastewater, on-site treatment methods (if any), National Pollutant Discharge Elimination System (NPDES) permit numbers and copies of reports, transport to off-site treatment, and removed solids management. General waste and disposal information included the identity of the end product being disposed, the form of the waste, the quantity of asbestos in the waste, the type of land disposal facility (e.g., impoundment, waste pile, landfill, injection well), and whether the disposal is on- or off-site. Note, however, that EPA is requiring that a site reporting "Disposed of within the U.S." in response to Table 3 must provide additional explanation to indicate the quantity, address of the disposal facility, and

Case 3:19-cv-03807-EMC   Document 101-1   Filed 07/10/23   Page 54 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

51

type of disposal (e.g., disposed in a landfill). EPA believes this level of reporting on waste disposal data is sufficient for purposes of this data collection. Due to the anticipated burden for reporters in contrast to the usefulness of the data that the Agency could collect, EPA is not including reporting on additional data elements related to wastewater discharge and waste disposal in this final rule beyond the disposal explanation that will be included in response to reporting "Disposed of within the U.S." in response to Table 3.

*2. Air emissions data.*

EPA considered collecting information related to air emissions at facilities that manufacture (including import) or process asbestos or asbestos-containing mixtures and products. The information included sources of emissions, methods of air pollution control, descriptions of control devices, and pollution control equipment operation and testing frequency and methods. Due to the anticipated burden for reporters in contrast to the usefulness of the data that the Agency could collect, EPA is not including reporting on these additional data elements in this final rule.

*3. Customer sites data.*

EPA also considered requiring additional information about the number of customers respondents have. For the reasons described previously, EPA is not including reporting on these additional data elements in this final rule; however, EPA is requiring manufacturers (including importers) and processors of asbestos that are selling a product that contains asbestos to report the number of customer sites they have.

*H. How will information be submitted to EPA?*

EPA is requiring electronic reporting similar to the requirements established in 2013 for submitting other information under TSCA (see 40 CFR 704.20(e)). EPA is requiring that

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

52

submitters use EPA's CDX (Central Data Exchange), the Agency's electronic reporting portal, for all reporting under this rule. In 2013, EPA finalized a rule to require electronic reporting of certain information submitted to the Agency under TSCA sections 4, 5, 8(a), and 8(d) (78 FR 72818, December 4, 2013 (FRL-9394-6)). The final rule followed two previous rules requiring similar electronic reporting of information submitted to EPA for TSCA CDR and for premanufacture notices (PMNs). By requiring similar electronic reporting under this rule, EPA expects that electronic reporting would save time, improve data quality, and increase efficiencies for both the submitters and the Agency.

EPA developed the Chemical Information Submission System (CISS) for use in submitting data electronically to the Agency for TSCA sections 4, 5, 6, 8(a), 8(b), 8(d), 8(e), and Title VI. CISS, a web-based reporting tool housed within the CDX environment, provides submitters with user-friendly applications to build and submit data packages to EPA within a secure, encrypted environment. CISS applications provide for the capture of both fielded data as well as the attachment of additional information using a wide variety of file types. Submitted information is rendered into PDF and XML formats, which are provided to submitters in the form of a Copy of Record.

EPA is requiring that submitters follow the same submission procedures used for other TSCA submissions (i.e., to register with EPA's CDX and use CISS to prepare a data file for submission). Registration enables CDX to authenticate user identity. To submit electronically to EPA via CDX, individuals must first register with CDX at *https://cdx.epa.gov/.* To register in CDX, the CDX registrant (also referred to as "Electronic Signature Holder" or "Public/Private Key Holder") agrees to the Terms and Conditions, provides information about the submitter and organization, selects a username and password, and follows the procedures outlined in the

Case 3:19-cv-03807-EMC   Document 101-1   Filed 07/10/23   Page 56 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
53

guidance document for CDX available at *https://cdx.epa.gov/FAQ#CSPP*.

Within CDX, CISS is available under the "Submission for Chemical Safety and Pesticide

Program (CSPP)" CDX flow. Users who have previously submitted under TSCA through CDX,

including submitting information under TSCA sections 4 and 5, CDR, or reporting under the

TSCA Inventory Notification (Active-Inactive) Requirements rule (82 FR 37520, Aug. 11, 2017

(FRL-9964-22)), will already have the CSPP flow linked to their account. Users reporting to

EPA using other CDX housed applications, including the Toxics Release Inventory TRI-MEweb,

would be able to add the CSPP flow to their existing CDX accounts.

All submitters are required to use CISS to prepare their submissions. CISS guides users

through a "hands-on" process of creating an electronic submission. Once a user completes the

relevant data fields and attaches appropriate PDF files, or other file types, such as XML files, the

web-based tool validates the submission by performing a basic error check and makes sure all

the required fields and attachments are provided and complete. Further instructions for uploading

PDF attachments or other file types, such as XML, and completing metadata information would

be available through CISS reporting guidance.

CISS also allows the user to choose to "Preview," "Save," or "Submit" the data package.

Once the submission process is initiated, the user is asked to certify the information and provide

requested information to complete the submission process. The data package is then sent, in an

encrypted state, to the Agency. The user can login to the application and check the submission

status of their data package. Upon successful receipt of the submission by EPA, the submission

status of the submissions will be flagged as "Completed" and a confirmation email will be sent to

the submitter's CDX inbox. The CDX inbox is used to notify the users when submissions are

received by EPA or to notify users when a submission-specific communication has been received

Case 3:19-cv-03807-EMC Document 101-1 Filed 07/10/23 Page 57 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

54

and how to locate and access the communication. Information on accessing the CDX user inbox is provided in the guidance document for CDX at *https://cdx.epa.gov/FAQ#CSPP*. To access CISS log into CDX using the link: *https://cdx.epa.gov/* and click on the appropriate user role associated with the CSPP data flow. For further instructions, visit

*https://www.epa.gov/assessing-and-managing-chemicals-under-tsca/electronic-reporting-requirements-certain-information*. Procedures for reporting under this rule are similar.

      EPA believes that electronic reporting reduces the reporting burden for submitters by reducing the cost and time required to review, edit, and transmit data to the Agency. It also allows submitters to share a draft submission within their organization, and more easily save a copy for their records or future use. Additionally, EPA believes that some of the anticipated submitters under this rule have experience with reporting electronically to EPA through CDX. The resource and time requirements to review and process data by the Agency will also be reduced and document storage and retrieval will require fewer resources. EPA expects to benefit from receiving electronic submissions and communicating electronically with submitters.

*I. How is confidential information treated?*

      In a separate rulemaking, EPA finalized new provisions concerning the assertion and treatment of CBI claims for information reported to or otherwise obtained by EPA under TSCA (88 FR 37155, June 7, 2023 (FRL-8223-02-OCSPP)). Unless otherwise stated in specific TSCA regulations, EPA will govern how CBI claims made for information submitted under TSCA, including information submitted under this part, will be asserted, reviewed, and maintained.

      In this rulemaking, EPA is requiring in 40 CFR section 704.180(h) that a person submitting a reporting form under this action may claim some information in the form as confidential at the time of submission, consistent with TSCA section 14. EPA is also providing

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

55

that certain data elements cannot be claimed as confidential:

• Site NAICS code in 40 CFR section 704.180(e)(3)(v), because it represents a general description associated with the manufacture (including import) or processing of a chemical substance.

• Chemical and bulk material identities (as identified in 40 CFR section 704.180(h)(1)(ii)(B)), because the chemical identities are listed in the asbestos definition in 40 CFR section 704.180(a) or are general identities of bulk materials that are already publicly known.

• Responses that are blank or "not known or reasonably ascertainable" (as identified in 40 CFR 704.180(h)(1)(ii)(C)) because there is no data to claim as confidential.

• Health and safety study data (as identified in 40 CFR 704.180(h)(1)(ii)(D)), because, under TSCA section 14(b)(2), such information is not protected from disclosure. Note, however, that CBI claims may be asserted to the extent that disclosure of data from studies would reveal certain information as provided in 40 CFR 704.180(h)(1)(ii)(D)(1)-(3). The electronic reporting tool described in 40 CFR 704.180(i) enables the submitter of a health and safety study containing CBI claims to attach a public copy of the study, as described in 40 CFR 704.180(h)(2)(vi).

TSCA section 14 also requires that the submitter attest to a statement concerning the confidential status of the information, that they have a reasonable basis to conclude that release of the information would likely result in substantial harm to the competitive position of their business and that the information is not readily discoverable through reverse engineering. The submitter must certify that this statement and any substantiation provided are true and correct. This certification statement will be incorporated into the electronic reporting tool identified in 40 CFR 704.180(i).

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

56

TSCA section 14(c)(3) further requires that substantiation be provided at the time a confidentiality claim is asserted. However, TSCA section 14(c)(2) exempts certain information from that substantiation requirement (*e.g.,* specific production volume). Under this rule, CBI claims for specific production or import volumes of the manufacturer need not be substantiated, as identified in 40 CFR 704.180(h)(2)(iv). For all other information submitted under this rule, submitters are required to substantiate their confidentiality claims at the time of submission. Substantiation questions are listed in 40 CFR 704.180(h)(2)(iii) and will be incorporated into the electronic reporting tool identified in 40 CFR 704.180(i). Responses to the substantiation questions that are not specific to the data element for which a claim of confidentiality is being substantiated may be inadequate to justify confidential protection.

Any information which is claimed as confidential will be disclosed by EPA only in accordance with the procedures and requirements of TSCA section 14 and 40 CFR part 2, or any TSCA-specific CBI provisions that may in the future replace or supplement portions of 40 CFR part 2. TSCA section 14(b)(2) limits confidentiality protections for health and safety studies and information from health and safety studies regarding chemical substances that have been offered for commercial distribution, except to the extent such studies or information reveals "information that discloses processes used in the manufacturing (including importing) or processing of a chemical substance or mixture or, in the case of a mixture, the portion of the mixture comprised by any of the chemical substances in the mixture." The workplace exposure measurement data listed in 40 CFR 704.180(e)(5)(iii) are from studies pertaining to human exposure in the workplace and therefore are considered health and safety study data. Submitters asserting a confidentiality claim for such information as provided in 40 CFR 704.180(h)(1)(ii)(D)(1)-(3) in health and safety studies will be required to submit a sanitized copy of the study, removing only

Case 3:19-cv-03807-EMC   Document 101-1   Filed 07/10/23   Page 60 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

57

that information which is claimed as confidential. See 40 CFR section 704.180(h)(1)(ii)(D) for

additional information regarding health and safety studies and 40 CFR section 704.180(h)(2)(vi)

regarding public copies.

*J. What are the recordkeeping requirements?*

EPA is requiring that each person who reports under this part must maintain records that

document information reported under this part and, in accordance with TSCA, permit access to

and the copying of such records by EPA officials. Consistent with the CDR rule, EPA is

requiring a five-year recordkeeping period, beginning on the last date of the submission period.

The five-year retention requirement generally corresponds with the statute of limitations for

TSCA violations. Information in this one-time data collection will be used by EPA for risk

evaluation and risk management activities, and the companies must maintain the records for five

years in the event that EPA has follow-up questions as the associated Agency activities are

completed. Further, EPA believes the burden of retaining these records, which are likely

electronic, is minimal.

As demonstrated by the different reporting and recordkeeping requirements in this

rulemaking and the structure of this rule in addressing them independently, EPA generally

intends the rule's provisions to be severable from each other. As such, to the extent that any

portion of this rule is declared invalid, EPA intends those provisions to be severable and the

remaining provisions continue to be valid.

**V. References**

The following is a listing of the documents that are specifically referenced in this

document. The docket includes these documents and other information considered by EPA,

including documents that are referenced within the documents that are included in the docket,

Case 3:19-cv-03807-EMC   Document 101-1   Filed 07/10/23   Page 61 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

58

even if the referenced document is not physically located in the docket. For assistance in locating these other documents, please consult the technical person listed under **FOR FURTHER INFORMATION CONTACT**.

1. EPA. Final Rule; Asbestos: Manufacture, Importation, Processing, and Distribution in Commerce Prohibitions. *Federal Register*. 54 FR 29460, July 12, 1989 (FRL-3476-2).

2. EPA, OPPT. Economic Analysis for the TSCA Section 8(a) Reporting and Recordkeeping Requirements for Asbestos. June 2023.

3. EPA. Learn About Asbestos. EPA Website. *https://www.epa.gov/asbestos/learn-about-asbestos*.

4. EPA. IRIS Toxicological Review of Libby Amphibole Asbestos (Final Report). U.S. Environmental Protection Agency, Washington, DC, EPA/635/R-11/002F, 2014. *https://cfpub.epa.gov/ncea/iris/iris_documents/documents/toxreviews/1026tr.pdf*.

5. Agency for Toxic Substances and Disease Registry (ATSDR). Summary Report: Exposure to Asbestos-Containing Vermiculite from Libby, Montana, at 28 Processing Sites in the United States. U.S. Department of Health and Human Services, Agency for Toxic Substances and Disease Registry, Atlanta, GA, 2008. *https://www.atsdr.cdc.gov/asbestos/sites/national_map/Summary_Report_102908.pdf and https://hero.epa.gov/hero/index.cfm/reference/details/reference_id/783510*.

6. EPA. Risk Evaluation for Asbestos, Part 1: Chrysotile Asbestos. U.S. Environmental Protection Agency, Office of Chemical Safety and Pollution Prevention (OCSPP). Washington, DC, EPA-740-R1-8012, 2020. *https://www.epa.gov/sites/default/files/2020-12/documents/1_risk_evaluation_for_asbestos_part_1_chrysotile_asbestos.pdf*.

7. National Toxicology Program (NTP). Asbestos, CAS No. 1332-21-4. In *Report on*

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

59

*Carcinogens* (15th ed.).: U.S. Department of Health and Human Services, Public Health Service, Research Triangle Park, NC, 2021.

*https://ntp.niehs.nih.gov/ntp/roc/content/profiles/asbestos.pdf.*

8. EPA. Determining If You Are a Manufacturer or Importer for Reporting

*https://www.epa.gov/chemical-data-reporting/determining-if-you-are-manufacturer-or-importer-required-report.*

9. EPA. Instructions for Reporting 2020 TSCA Chemical Data Reporting (pp. 45-47).: U.S. Environmental Protection Agency, Office of Pollution Prevention and Toxics (OPPT) Washington, DC, 2020. *https://www.epa.gov/sites/default/files/2020-12/documents/instructions_for_reporting_2020_tsca_cdr_2020-11-25.pdf.*

10. EPA. TSCA Chemical Data Reporting Fact Sheet: Articles. U.S. Environmental Protection Agency, Office of Pollution Prevention and Toxics (OPPT) Washington, DC, 2012. *https://www.epa.gov/sites/default/files/documents/articlesfactsheetforcdr_reporting_080312.pdf.*

11. Asbestos Disease Awareness Organization (ADAO), American Public Health Association (APHA), Center for Environmental Health (CEH), Environmental Health Strategy Center (EHSC), Environmental Working Group (EWG), Safer Chemicals, Healthy Families (SCHF) to Andrew Wheeler, Administrator, U.S. Environmental Protection Agency. Petition under TSCA Section 21 to Require Reporting on Asbestos Manufacture, Importation and Use under TSCA Section 8(a). September 27, 2018. *https://www.epa.gov/sites/default/files/2018-10/documents/adao-asbestos-cdr-petition-all.pdf.*

12. The Attorneys General of Massachusetts, California, Connecticut, Hawaii, Maine, Maryland, Minnesota, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, Washington, and the District of Columbia to Andrew Wheeler, Administrator, U.S.

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
60

Environmental Protection Agency. Petition Under TSCA Section 21(a) for EPA to Issue an Asbestos Reporting Rule to Require Reporting under TSCA Section 8(a). January 31, 2019. *https://www.epa.gov/sites/default/files/2019-02/documents/tsca_section_21_rulemaking_petiton_for_asbestos_reporting_1_31_2019_2.pdf.*

13. Settlement Agreement, Case Nos. 3:19-CV-00871-EMC; 3:19-CV-03807-EMC. Asbestos Disease Awareness Organization, et al., Plaintiffs, v. U.S. Environmental Protection Agency, et al., Defendants. June 7, 2021.

14. EPA. Scope of the Risk Evaluation for Asbestos. U.S. Environmental Protection Agency, Office of Chemical Safety and Pollution Prevention (OCSPP), Washington, DC, EPA-740-R1-7008, 2017. *https://www.epa.gov/sites/default/files/2017-06/documents/asbestos_scope_06-22-17.pdf.*

15. EPA. Response to Public Comments on Proposed Rule. Asbestos; Reporting and Recordkeeping Requirements Under the Toxics Substances Control Act (TSCA). U.S. Environmental Protection Agency, Office of Chemical Safety and Pollution Prevention (OCSPP), Washington, DC. RIN 2070-AK99. June 2023.

16. Occupational Safety and Health Administration (OSHA). OSHA Occupational Chemical Database, Talc (Containing Asbestos). United States Department of Labor. *https://www.osha.gov/chemicaldata/276.*

17. U.S. Geological Survey (USGS). Asbestos Statistics and Information: Mineral Commodity Summaries. 2021. *https://pubs.usgs.gov/periodicals/mcs2021/mcs2021-asbestos.pdf*

18. EPA. Final Rule; Chemical Substances When Manufactured or Processed as Nanoscale Materials; TSCA Reporting and Recordkeeping Requirements [40 CFR part 704]. *Federal Register.* 82 FR 3641, January 12, 2017 (FRL-9957-81).

Case 3:19-cv-03807-EMC  Document 101-1  Filed 07/10/23  Page 64 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

61

19. EPA. Information Collection Request (ICR) for the TSCA Section 8(a) Reporting and

Recordkeeping Requirements for Asbestos (Final Rule; RIN 2070-AK99). EPA ICR No.

2711.02 and OMB No. 2070–0222. June 2023.

20. EPA. Unfunded Mandates Reform Act Statement. Asbestos; Reporting and

Recordkeeping Requirements under the Toxic Substances Control Act (TSCA); Final. June

2023.

## VI. Statutory and Executive Order Reviews

Additional information about these statutes and Executive Orders can be found at

*https://www.epa.gov/laws-regulations/laws-and-executive-orders.*

*A. Executive Order 12866: Regulatory Planning and Review and Executive Order 14094:*

*Modernizing Regulatory Review*

This action is a "significant regulatory action", as defined under section 3(f)(1) of

Executive Order 12866, as amended by Executive Order 14094. Accordingly, EPA, submitted

this action to the Office of Management and Budget (OMB) for Executive Order 12866 review.

Documentation of any changes made in response to the Executive Order 12866 review is

available in the docket. EPA prepared an economic analysis of the potential costs and benefits

associated with this action (Ref. 2), which is summarized in Unit I.E. and available in the docket.

*B. Paperwork Reduction Act (PRA)*

The information collection requirements in this rule will be submitted to OMB for

approval under the PRA, 44 U.S.C. 3501 *et seq.* The Information Collection Request (ICR)

document that EPA prepared has been assigned EPA ICR No. 2711.02 (Ref. 19) and the OMB

Control No. 2070-0222. You can find a copy of the ICR document in the docket for this action,

and it is briefly summarized here. The information collection requirements are not enforceable

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

until OMB approves them.

The information collection activities in the rule include a one-time reporting by companies that manufacture (including import) or process asbestos of certain information to EPA and the requirement to maintain corresponding records.

Reported information would be used by EPA and other Federal agencies in considering potential actions on asbestos, including EPA's TSCA risk evaluation and risk management activities. Reporting requirements may provide EPA with baseline information needed to assess whether certain "conditions of use" of asbestos pose an unreasonable risk to human health or the environment under TSCA section 6(b). EPA must consider reasonably available information as part of the risk evaluation process under TSCA section 6(b), and as part of any subsequent risk management rulemaking efforts under TSCA section 6(a). Understanding the health risks of asbestos and protecting the public and potentially exposed or susceptible subpopulations from these risks is a priority for EPA. Data collected by this rule could help to fill data gaps that EPA may have in exposure for asbestos that could better inform Part 2 of the asbestos risk evaluation. Following risk evaluation, TSCA mandates that EPA take action if the Agency determines that asbestos presents unreasonable risk to health or the environment. EPA needs to ensure that sufficient information is reasonably available on the uses and trends of asbestos activities to conduct the asbestos Part 2 Risk Evaluation, and if the Agency determines asbestos presents unreasonable risk based on that risk evaluation, then develop a risk management rule that would address any unreasonable risk.

TSCA section 14 imposes requirements for the assertion, substantiation, and review of information that is claimed as confidential under TSCA. Some information submitted at the time of the reporting under this rule may be claimed as confidential.

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

63

*Respondents/affected entities:* Asbestos manufacturers (including importers) and processors. See also Unit I.A.

*Respondent obligation to respond:* Mandatory. TSCA section 8(a) and 40 CFR 704.180.

*Frequency of response:* One time.

*Total estimated number of respondents:* 375.

*Total estimated number of responses*: 375.

*Total estimated burden:* 1.5 million hours (per year average). Burden is defined at 5 CFR 1320.3(b).

*Total estimated cost:* $107.7 million (per year average), which includes no annualized capital or operation and maintenance costs.

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number. The OMB control numbers for the EPA's regulations in 40 CFR are listed in 40 CFR part 9. When OMB approves this ICR, the Agency will announce that approval in the *Federal Register* and publish a technical amendment to 40 CFR part 9 to display the OMB control number for the approved information collection activities contained in this final rule.

*C. Regulatory Flexibility Act (RFA)*

I certify that this action will not have a significant economic impact on a substantial number of small entities under the RFA, 5 U.S.C. 601 *et seq*. The small entities subject to the requirements of this action are persons who have manufactured (including imported), or processed asbestos, including asbestos as a component of a mixture, in an article, and as an impurity in any of the four full calendar years prior to the effective date of this rule. The Agency has determined that approximately 66,000 small firms may be affected by the rule. In the

Case 3:19-cv-03807-EMC   Document 101-1   Filed 07/10/23   Page 67 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
64

proposed rule, because EPA did not estimate the number of manufacturers or processors of impurities, EPA estimated that 15 small businesses would be affected. The total cost to small businesses is $279 million to $283 million, essentially all of which is an increase compared to the estimates for the proposed rule (since EPA did not estimate the number of manufacturers or processors of impurities at the proposed rule stage). There are 32,000 to 33,000 small businesses that are not subject to this rule because their revenues are less than $500,000. (The range is based on the potential number of firms that otherwise would have reported for importing aftermarket automotive brakes in the absence of the $500,000 threshold.) The $500,000 reporting threshold saves small businesses a total of $138 million to $140 million.

Costs to small businesses range from $4,430 per firm (for firms reporting on products that intentionally contain asbestos) to $11,273 per firm (for firms reporting on asbestos present as an impurity). Of small firms affected by the rule, 99.93 percent are expected to have cost impacts of less than 1% of annual revenues, 0.07 percent are expected to have impacts between 1-3 percent, and none are expected to have impacts of more than 3 percent of annual revenues. Details of this analysis are presented in the EA (Ref. 2).

One small oilfield brake block importer, 2 small gasket manufacturers, and 9 to 849 small firms in the aftermarket automotive brake industry are predicted to report. The average cost for these small firms is $4,430, as shown in Table 7-14 of the EA (Ref. 2). The cost impact to these firms is less than 1% of revenues, which does not represent a significant impact on these small firms.

As shown in Table 7-14 of the EA (Ref. 2), 166 small firms are predicted to report for asbestos present as an impurity, at an average cost of $11,273. Of these firms, 118 have a cost impact of less than 1% of revenues and 48 have a cost impact between 1% and 3% of revenues.

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

This does not represent a significant impact on these small firms.

Table 7-14 of the EA (Ref. 2) also indicates that there are 65,335 small firms estimated to conduct compliance determination for asbestos as an impurity but not submit a report, incurring an average cost of $4,703. All of these firms have cost impacts of less than 1% of revenues, and thus do not incur significant impacts.

*D. Unfunded Mandates Reform Act (UMRA)*

This action contains a federal mandate under UMRA, 2 U.S.C. 1531–1538, that may result in expenditures of $100 million or more for state, local and tribal governments, in the aggregate, or for the private sector in any one year. Accordingly, the EPA has prepared a written statement (Ref. 20) as required under UMRA section 202 that is included in the docket for this action and is briefly summarized here.

1. *Authorizing Legislation.* This rule is issued under the authority of TSCA section 8(a)(1), 15 U.S.C. 2607 (a)(1).

2. *Benefit-Cost Analysis.* EPA has prepared an economic analysis to evaluate, among other things, the benefits and costs of this rule (Ref. 2). The rule is calculated to result in a total one-time cost to the private sector of $319 million to $323 million. When adjusted for inflation, the $100 million UMRA threshold is equivalent to approximately $170 million. Thus, the cost of the rule to the private sector in the aggregate exceeds the inflation-adjusted UMRA threshold.

Because this is an information-collecting rule, EPA is not able to quantitatively measure the associated benefits. However, the rule may supply information on asbestos to which Federal agencies (and the public) do not currently have access. By enhancing the data supplied to risk-screening and risk-management programs, EPA expects to more effectively and expeditiously evaluate and manage any potential unreasonable risk posed by asbestos. The more EPA can base

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

its decisions on actual data rather than on assumptions, the better EPA is able to tailor its risk management decisions to the level of actual risk, whether higher or lower than it would be if based on assumptions alone. Ultimately, enhancing the risk evaluation process will have positive consequences for human health and the environment and may enable a more efficient allocation of EPA's and society's resources.

3. *Impacts on State, local, and Tribal governments*. This rule does not contain a significant Federal intergovernmental mandate because it neither imposes enforceable duties on State, local, or Tribal governments nor reduces an authorized amount of Federal financial assistance provided to State, local, or tribal governments. This rule contains no regulatory requirements that might significantly or uniquely affect small governments. The rule would require reporting from certain persons who manufactured (including imported) or processed asbestos and asbestos-containing articles (including as an impurity and as a component of a mixture). Governments do not typically engage in these activities, so State, local, and tribal government entities are not expected to be subject to the rule's requirements. This action is not subject to the requirements of UMRA section 203 because it contains no regulatory requirements that might significantly or uniquely affect small governments.

*E. Executive Order 13132: Federalism*

This action does not have federalism implications as specified in Executive Order 13132 (64 FR 43255, August 10, 1999) because it will not have substantial direct effects on states, on the relationship between the national government and the states, or on the distribution of power and responsibilities among the various levels of government. Thus, Executive Order 13175 does not apply to this action.

*F. Executive Order 13175: Consultation and Coordination with Indian Tribal Governments*

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

67

This action does not have tribal implications as specified in Executive Order 13175 (65 FR 67249, November 9, 2000) because it will not have substantial direct effects on tribal governments, on the relationship between the Federal government and the Indian tribes, or on the distribution of power and responsibilities between the Federal government and Indian tribes. It does not have substantial direct effects on tribal government because EPA does not anticipate that asbestos was manufactured (including imported) or processed by tribes so this rulemaking is not expected to impose substantial direct compliance costs on tribal governments. Thus, Executive Order 13175 does not apply to this action.

*G. Executive Order 13045: Protection of Children from Environmental Health Risks and Safety Risks*

EPA interprets Executive Order 13045 (62 FR 19885, April 23, 1997) as applying to those regulatory actions that concern environmental health or safety risks that the EPA has reason to believe may disproportionately affect children, per the definition of "covered regulatory action" in section 2-202 of Executive Order 13045. This action is not subject to Executive Order 13045, because it does not concern an environmental health or safety risk. Since this action does not concern human health, EPA's Policy on Children's Health also does not apply.

Although this action does not concern an environmental health or safety risk, this one-time data collection will provide information that will be used to support the ongoing EPA risk evaluation of asbestos under TSCA, among other activities. The purpose of a TSCA risk evaluation is to determine whether a chemical substance presents an unreasonable risk to health or the environment, under the conditions of use, including an unreasonable risk to a relevant potentially exposed or susceptible subpopulation. As required by TSCA section (6)(b), EPA

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

68

established a process to conduct these risk evaluations, see the final rule entitled "Procedures for

Chemical Risk Evaluation Under the Amended Toxic Substances Control Act" (82 FR 33726,

July 20, 2017 (FRL-9964-38)) (Risk Evaluation Rule). Pursuant to TSCA and the Risk

Evaluation Rule, as part of the risk evaluation process, EPA must (1) evaluate both hazard and

exposure, (2) exclude consideration of costs or other non-risk factors, (3) use scientific

information and approaches in a manner that is consistent with the requirements in TSCA for the

best available science, and (4) ensure decisions are based on the weight-of-scientific-evidence.

EPA also believes that the information obtained as a result of this one-time data collection could

also be used by the public, government agencies and others to identify potential problems, set

priorities, and take appropriate steps to reduce any potential human health or environmental risks

identified in the TSCA risk evaluation.

*H. Executive Order 13211: Actions Concerning Regulations that Significantly Affect Energy Supply, Distribution in Commerce, or Use*

This action is not a "significant energy action" as defined in Executive Order 13211 (66

FR 28355, May 22, 2001), because it is not likely to have a significant adverse effect on the

supply, distribution or use of energy. Further, we have concluded that this action is not likely to

have any adverse effect on the supply, distribution or use of energy.

*I. National Technology Transfer and Advancement Act (NTTAA)*

This rulemaking does not involve technical standards under the NTTAA section 12(d), 15

U.S.C. 272.

*J. Executive Order 12898: Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations*

Executive Order 12898 (59 FR 7629, February 16, 1994) directs federal agencies, to the

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

greatest extent practicable and permitted by law, to make environmental justice part of their mission by identifying and addressing, as appropriate, disproportionately high and adverse human health or environmental effects of their programs, policies, and activities on minority populations (people of color and/or Indigenous peoples) and low-income populations.

EPA believes that it is not practicable to assess whether the human health or environmental conditions that exist prior to this action result in disproportionate and adverse effects on people of color, low-income populations and/or Indigenous peoples. As explained in Unit II.B., asbestos exposure is a hazard to human health. This action establishes a one-time reporting requirement for asbestos that requires companies to report to EPA certain exposure-related information known to or reasonably ascertainable by those entities as discussed in detail in Unit IV.F. At this time, EPA is not able to provide an assessment of potential exposures that may be identified as a result of the one-time reporting requirement in this rule and thus cannot determine whether the human health or environmental conditions that exist prior to this action have the potential to result in disproportionate and adverse effects on people of color, low-income populations and/or Indigenous peoples. This action establishes a one-time reporting requirement and would not change any existing disproportionate and adverse effects on people of color, low-income populations and/or Indigenous peoples.

The information obtained as a result of this action may be used to support the ongoing EPA risk evaluation for asbestos, which may result in risk management activities. EPA also believes that the information obtained as a result of this action could be used by the public (including people of color, low-income populations and/or Indigenous peoples) to inform their behavior as it relates to sources of asbestos exposure or by government agencies and others to identify potential problems, set priorities, and take appropriate steps to reduce any potential

Case 3:19-cv-03807-EMC  Document 101-1  Filed 07/10/23  Page 73 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
70

human health or environmental risks.

*K. Congressional Review Act (CRA)*

This action is subject to the CRA, 5 U.S.C. 801 *et seq.*, and EPA will submit a rule report to each House of the Congress and to the Comptroller General of the United States. This action is not a "major rule" as defined by 5 U.S.C. 804(2).

**List of Subjects in 40 CFR Part 704**

Chemicals, Confidential business information, Environmental protection, Hazardous substances, Reporting and recordkeeping requirements.

Dated:

**Michal Freedhoff,**

*Assistant Administrator, Office of Chemical Safety and Pollution Prevention.*

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

71

Therefore, for the reasons set forth in the preamble, EPA is amending 40 CFR chapter I, Subchapter R as follows:

## PART 704 – REPORTING AND RECORDKEEPING REQUIREMENTS

1. The authority citation for part 704 continues to read as follows:

**Authority**: 15 U.S.C. 2607(a).

2. Amend subpart B by adding § 704.180 to read as follows:

## Subpart B − Chemical-Specific Reporting and Recordkeeping Rules

\*   \*   \*   \*   \*

## § 704.180 Asbestos.

(a) *Definitions.*

The definitions in subpart A of this part apply to § 704.180 unless otherwise specified in this section.

*Asbestos* is a collective term meaning any of the substances listed in Table 1 of this paragraph.

## Table 1 in paragraph (a) – CASRN of Asbestos Types

| CASRN | Asbestos Type |
|---|---|
| 1332-21-4 | Asbestos |
| 12001-29-5 | Chrysotile |
| 12001-28-4 | Crocidolite |
| 12172-73-5 | Amosite |
| 77536-67-5 | Anthophyllite |
| 77536-68-6 | Tremolite |
| 77536-66-4 | Actinolite |
| NA | Libby amphibole asbestos (mainly consisting of tremolite [CASRN 77536-68-6], winchite [CASRN 12425-92-2], and richterite [CASRN 17068-76-7]) |

*Bulk asbestos* means any quantity of asbestos fiber of any type or grade, or combination of types or grades, that is mined or milled with the purpose of obtaining asbestos. This term does not include asbestos that is produced or processed as a contaminant or an impurity.

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

72

*Bulk materials containing asbestos* means bulk materials in which asbestos is being mined or milled as an impurity.

*Chemical Information Submission System* or *CISS* means EPA's electronic, web-based reporting tool for the completion and submission of CDR data, reports, and other information, or its successors.

*Form A* means an abbreviated form for persons who know or can reasonably ascertain that they manufactured (including imported) or processed asbestos, including as an impurity, during the reporting period described in paragraph (f) but do not know and cannot reasonably ascertain the amount of asbestos manufactured (including imported) or processed by them.

*Form B* means the standard form to be used by persons who know or can reasonably ascertain that they manufactured (including imported) or processed asbestos, including as an impurity, during the reporting period described in paragraph (f) and know or can reasonably ascertain how much asbestos they manufactured (including imported) or produced.

*Primary processor* means a person who starts with bulk asbestos or bulk materials containing asbestos, and makes a mixture that contains asbestos as a component.

*Secondary processor* means a person who further processes asbestos, after primary processing of asbestos is completed, including as a component of a mixture, or an article containing asbestos.

*Small processor* means any processor whose total annual sales, when combined with those of its parent company (if any), are less than $12 million.

(b) *Substance for which reports must be submitted.*

The requirements of this section apply to asbestos, including asbestos in bulk form, in an article and/or product, as an impurity, or as a component of a mixture.

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

73

(c) *Persons who must report.*

Persons (i.e., plant sites) who have manufactured (including imported), or processed asbestos, including asbestos as a component of a mixture, asbestos in articles, or asbestos as an impurity in the four full calendar years prior to the effective date of this rule, and with annual sales greater than or equal to $500,000, in any calendar year from 2019 to 2022, when combined with those of their ultimate parent company (if any), must report under this subpart.

(d) *Persons exempt from reporting.*

A person who is subject to reporting requirements pursuant to paragraph (c) is exempt from the requirements in this subpart to the extent that the person and that person's use of asbestos is described in this paragraph.

(1) *Non-isolated intermediate.* A person who manufactures or proposes to manufacture asbestos, as described in paragraph (c), solely as a non-isolated intermediate is exempt from the reporting requirements of this subpart.

(2) *Research and development.* A person who manufactures (including imports), processes, or proposes to manufacture (including import), or process asbestos, as described in paragraph (c), only in small quantities solely for research and development is exempt from the reporting requirements of this subpart.

(3) *Small manufacturers (including importers) and processors.* Small manufacturers (including importers) and processors are exempt from the reporting requirements of this subpart for Libby amphibole asbestos only.

(4) *Byproducts.* A person who manufactures (including imports) or proposes to manufacture (including import) asbestos solely as a byproduct is exempt from the reporting requirements of this subpart.

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

(e) *Reporting information to EPA.*

Persons described in paragraph (c) and not described and exempted in paragraph (d) of this section must report to EPA the following information, to the extent known to or reasonably ascertainable by them. In the event that specific numeric data are not known or are not reasonably ascertainable by the submitter, then reasonable estimates may be submitted.

(1) *Required forms.* Report using the appropriate Form, based on whether you know or can reasonably ascertain a quantity for asbestos.

(i) *Form A.* Report using Form A if you know or can reasonably ascertain that asbestos, including as a component of a mixture or article, or as an impurity, but are unable to determine the asbestos quantity by weight.

(ii) *Form B.* Report using Form B if you know or can reasonably ascertain a quantity for asbestos, including as a component of a mixture or article, or as an impurity.

(2) *A certification statement signed and dated by an authorized official of the submitter company.* The authorized official must certify that the submitted information has been completed in compliance with the requirements of this part and that the confidentiality claims made on Form A or Form B are true and correct. The certification must be signed and dated by the authorized official for the submitter company, and provide that person's name, official title, and email address.

(3) *Company and plant site information.* The following currently correct company and plant site information must be reported for each site at which a reportable chemical substance is manufactured (including imported) or processed (see § 704.3 for the definition of "site," which includes what "site" means for importers):

(i) *Company name.* The highest-level U.S. parent company name, address, and Dun and

Case 3:19-cv-03807-EMC  Document 101-1  Filed 07/10/23  Page 78 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

75

Bradstreet D-U-N-S® (D&B) number. A submitter under this part must obtain a D&B number for the U.S. parent company if none exists.

(ii) *Authorized official.* The name of a person who will serve as Authorized Official for the submitter company, and who will be able to sign the certification statement as described in paragraph (e)(2), the Authorized Official's full mailing address, telephone number, and e-mail address.

(iii) *Point of contact.* The name of a person who will serve as technical contact for the submitter company, and who will be able to answer questions about the information submitted by the company to EPA, the contact person's full mailing address, telephone number, and e-mail address.

(iv) *Site information.* The site name, full street address, including the county or parish (or other jurisdictional indicator) in which the plant site is located. Also report the following:

(A) The appropriate D&B number for the plant site. If none exists, you must obtain a D&B number for the reported site.

(B) Other site identification numbers, including the Facility Registry Service (FRS) identification number, if they exist.

(v) *Applicable NAICS code.* The six-digit North American Industry Classification System (NAICS) code(s) of the site.

(vi) *Number of employees.* The total number of employees at the site. Select from among the ranges of employees listed in Table 2 of this paragraph and report the corresponding code (i.e., W1 through W8):

**Table 2 in paragraph (e) – Codes for Reporting Number of Employees**

| Code | Range |
|------|-------|
| W1 | Fewer than 10 employees |

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.
76

| W2 | At least 10 but fewer than 25 employees |
|---|---|
| W3 | At least 25 but fewer than 50 employees |
| W4 | At least 50 but fewer than 100 employees |
| W5 | At least 100 but fewer than 500 employees |
| W6 | At least 500 but fewer than 1,000 employees |
| W7 | At least 1,000 but fewer than 10,000 employees |
| W8 | At least 10,000 employees |

(4) *Activity information.* The following activity information must be reported.

(i) *Type of activity at reporting site.* Report all that apply.

(A) Mining of bulk asbestos or bulk materials containing asbestos, including as an impurity.

(B) Milling of bulk asbestos or bulk materials containing asbestos, including as an impurity.

(C) Importing of bulk asbestos or bulk materials containing asbestos, including as an impurity.

(i) *For importing only.* For importing only, if the imported bulk material was never physically present at the reporting site.

(ii) [Reserved]

(D) Primary processing of bulk asbestos or bulk materials containing asbestos, including as an impurity.

(E) Secondary processing of asbestos, including as a component of a mixture, or an article containing asbestos.

(F) Importing of asbestos, including as a component of a mixture, or an article containing asbestos.

(i) *For importing only.* For importing only, if the imported bulk material was never physically present at the reporting site.

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

(ii) *Form B only.* For mining, milling, or importing of bulk asbestos reported under activity in paragraph (e)(4)(i)(A) through (C), report by year:

(A) *The most specific asbestos type that applies.* Select from among the asbestos types listed in Table 1 of paragraph (a) in this section. If the specific asbestos type is not known or reasonably ascertainable, report the general listing, "asbestos CASRN 1332-21-4".

(B) *Report.* For each asbestos type, report the following:

(1) Quantity of asbestos, in pounds.

(2) Disposition of asbestos (see Table 3 of this paragraph).

**Table 3 in paragraph (e) – Disposition**

| Code | Disposition Description |
|------|-------------------------|
| 1 | Used on-site, including further processed |
| 2 | Stored on-site |
| 3 | Sent to another U.S. site (including intra-company transfer) for use or processing |
| 4 | Stored at another U.S. site (including intra-company transfer) |
| 5 | Exported outside of the U.S. without further processing |
| 6 | Disposed of within the U.S. (explain) |
| 7 | Other (explain) |

(iii) *Reporting information for mining, milling, or importing of bulk materials containing asbestos, including as an impurity.* For mining, milling, or importing of bulk materials containing asbestos reported under the activity identified in paragraph (e)(4)(i)(A) through (C), report by year:

(A) Bulk material type manufactured or processed.

(B) For Form B only, for each bulk material type:

(1) Quantity of bulk material manufactured or processed.

(2) Percent asbestos impurity by weight in bulk material.

(3) The most specific asbestos type that applies. Select from among the asbestos types listed in Table 1 in paragraph (a) of this section. If the specific asbestos type is not known or

Case 3:19-cv-03807-EMC   Document 101-1   Filed 07/10/23   Page 81 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

78

reasonably ascertainable, report the general listing, asbestos CASRN 1332-21-4.

(4) Any testing of or test results assessing the asbestos content of your bulk material in the applicable reporting years.

(i) If testing was conducted, specify how often testing was conducted on the presence of asbestos in your bulk material and what method and type of test was used for determining asbestos content, and provide the test results.

(ii) If testing was not conducted, explain how you knew or reasonably ascertained the presence and amount of asbestos in the bulk materials.

(C) For each bulk material type, the disposition of bulk material (see Table 3 of this paragraph).

(D) For importing only, if the imported bulk material was never physically present at the reporting site.

(iv) *Reporting information for primary processors.* For primary processing reported under activity identified in paragraph (e)(4)(i)(D) of this section, report by year:

(A) For Form B only, the total quantity of asbestos processed.

(B) End product type, selecting from products listed in Table 4 of this paragraph. If your end product is not listed, report "other" and provide a brief description. For each end product type, report:

(1) For Form B only, the most specific asbestos types that apply. Select from among the asbestos types listed in Table 1 in paragraph (a) of this section. If the specific asbestos types are not known or reasonably ascertainable, report the general listing, "asbestos CASRN 1332-21-4". Report also the total annual quantity of each of the asbestos types processed.

(2) The total annual production quantity of end products produced, using the associated

Case 3:19-cv-03807-EMC  Document 101-1  Filed 07/10/23  Page 82 of 93

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

79

unit of measure listed in Table 4 of this paragraph. If a unit of measure is not listed, provide the unit of measure associated with the quantity reported.

(3) For Form B only, the percentage of asbestos in the end product.

(4) For Form B only, the disposition of the end product (see Table 3 of this paragraph).

(5) For Form B only, explain if you tested or received test results assessing the asbestos content of your end product in the applicable reporting years.

(i) If testing was conducted, specify how often testing was conducted on the presence of asbestos in your end product and what method and type of test was used for determining asbestos content, and provide the test results.

(ii) If testing was not conducted, explain how you knew or reasonably ascertain the presence and amount of asbestos in the end product.

**Table 4 in paragraph (e) – End Product Types**

| Code | Name | End Product Unit of Measure |
|---|---|---|
| | **Papers, Felts, and Related Products** | |
| 01 | Commercial paper | Short Tons |
| 02 | Rollerboard | Short Tons |
| 03 | Millboard | Short Tons |
| 04 | Pipeline wrap | Short Tons |
| 05 | Beater-add gasketing paper | Short Tons |
| 06 | High-grade electrical paper | Short Tons |
| 07 | Unsaturated roofing felt | Short Tons |
| 08 | Saturated roofing felt | Short Tons |
| 09 | Flooring felt | Short Tons |
| 10 | Corrugated paper | Short Tons |
| 11 | Specialty paper (specify generic name) | Short Tons |
| 12 | Other (specify generic name) | (Specify) |
| | **Floor Coverings** | |
| 13 | Vinyl asbestos floor tile | Square yards |
| 14 | Asbestos felt backed vinyl flooring | Square yards |
| 15 | Other (specify generic name) | (Specify) |
| | **Asbestos Cement Products** | |

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

80

| 16 | A/C pipe and fittings | Short Tons |
|----|----------------------|-----------|
| 17 | A/C sheet, flat | 100 sq. ft. |
| 18 | A/C sheet corrugated | 100 sq. ft. |
| 19 | A/C shingle | Squares |
| 20 | Other (specify generic name) | (Specify) |
| **Transportation Friction Materials (including aircrafts, marine vessels, railroad engine and railcars, and other vehicles)** | | |
| 21 | Drum brake lining (light-medium vehicle) | Pieces |
| 22 | Disc brake pads (light-medium vehicle) | Pieces |
| 23 | Disc brake pads (heavy vehicle) | Pieces |
| 24 | Brake block (heavy equipment) | Pieces |
| 25 | Clutch facings (all) | Pieces |
| 26 | Automatic transmission friction components | Pieces |
| 27 | Friction materials (industrial and commercial) | Pieces |
| 28 | Custom automotive body filler | Pieces |
| 29 | Transmissions | Pieces |
| 30 | Mufflers | Pieces |
| 31 | Radiator top insulation | Pieces |
| 32 | Radiator sealant | Pieces |
| 33 | Other (specify generic name) | (Specify) |
| **Appliances** | | |
| 34 | Appliance Industrial and consumer (specify generic name) | Pieces |
| 35 | Other (specify generic name) | (Specify) |
| **Construction Products** | | |
| 36 | Boiler and furnace baffles | Pieces |
| 37 | Decorated building panels | Pieces |
| 38 | Asbestos cement sheet | Pieces |
| 39 | Flexible Air Conductor | Pieces |
| 40 | Hoods and Vents | Pieces |
| 41 | Portable construction building | Pieces |
| 42 | Roofing, saturated | Pieces |
| 43 | Roof shingles | Pieces |
| 44 | Wallboard | Pieces |
| 45 | Wall/roofing panels | Pieces |
| 46 | Other (specify generic name) | (Specify) |
| **Electrical Products and Components** | | |
| 47 | Cable insulation | Pieces |
| 48 | Electronic motor components | Pieces |
| 49 | Electrical resistance supports | Pieces |
| 50 | Electrical switchboard | Pieces |
| 51 | Electrical switch supports | Pieces |

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

81

| 52 | Electrical wire insulation | Pieces |
|----|----------------------------|--------|
| 53 | Motor armature | Pieces |
| 54 | Other (specify generic name) | (Specify) |
| **Fire and Heat Shielding Equipment and Components** | | |
| 55 | Arc deflectors | Pieces |
| 56 | Fire doors | Pieces |
| 57 | Fireproof absorbent paper | Short tons |
| 58 | Heat shields | Pieces |
| 59 | Molten metal handling equipment | Pieces |
| 60 | Oven and stove insulation | Short tons |
| 61 | Pipe wrap | Pieces |
| 62 | Stove lining, wood and coal | Pieces |
| 63 | Stove pipe rings | Pieces |
| 64 | Sleeves | Pieces |
| 65 | Thermal Insulation | Short tons |
| 66 | Other (specify generic name) | (Specify) |
| **Textiles and Clothing** | | |
| 67 | Cloth | Pounds |
| 68 | Thread, yarn, lap, roving, cord, rope, or wick | Pounds |
| 69 | Aprons | Pieces |
| 70 | Boots | Pieces |
| 71 | Gloves and mittens | Pieces |
| 72 | Hats and helmets | Pieces |
| 73 | Overgaiters | Pieces |
| 74 | Suits | Pieces |
| 75 | Aluminized cloth | Short Tons |
| 76 | Rope or braiding | Short Tons |
| 77 | Yarn, lap or roving | Short Tons |
| 78 | Wicks | Short Tons |
| 79 | Bags | Pieces |
| 80 | Belting | Short Tons |
| 81 | Blankets | Pieces |
| 82 | Carpet padding | Short Tons |
| 83 | Commercial/industrial dryer felts | Short Tons |
| 84 | Draperies | Pieces |
| 85 | Drip cloths | Pieces |
| 86 | Fire hoses | Pieces |
| 87 | Ironing board pads and insulation | Pieces |
| 88 | Mantles, lamp or catalytic heater | Pieces |
| 89 | Packing and packaging components | Pieces |
| 90 | Piano and organ felts | Pieces |

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

82

| 91 | Rugs | Pieces |
| 92 | Tape | Pieces |
| 93 | Theater curtains | Pieces |
| 94 | Umbrellas | Pieces |
| 95 | Other (specify generic name) | (Specify) |
| **Gaskets** | | |
| 96 | Sheet gasketing, rubber encapsulated beater addition | Pieces |
| 97 | Sheet gasketing, rubber encapsulated compressed | Pieces |
| 98 | Compressed sheet gasketing (other) | Pieces |
| 99 | Metal reinforced gaskets | Pieces |
| 100 | Automotive gaskets | Pieces |
| 101 | Other (specify generic name) | (Specify) |
| **Marine Equipment and Supplies** | | |
| 102 | Caulks, marine | Pounds |
| 103 | Liners, pond or canal | Pieces |
| 104 | Marine bulkheads | Pieces |
| 105 | Other (specify generic name) | (Specify) |
| **Paints, Coatings, Sealants and Compounds** | | |
| 106 | Asphaltic compounds | Pounds |
| 107 | Automotive/truck body coatings | Gallons |
| 108 | Buffing and polishing compounds | Pounds |
| 109 | Caulking and patching compounds | Pounds |
| 110 | Drilling fluid | Gallons |
| 111 | Flashing compounds | Pounds |
| 112 | Furnace cement | Pounds |
| 113 | Glazing compounds | Pounds |
| 114 | Plaster and stucco | Pounds |
| 115 | Pump valve, flange and tank sealing components | Pieces |
| 116 | Roof coatings | Gallons |
| 117 | Textured paints | Gallons |
| 118 | Tile cement | Pounds |
| 119 | Other (specify generic name) | (Specify) |
| **Other Products** | | |
| 120 | Sheet gasketing (other than beater-add) | Square Yards |
| 122 | Packing | Pounds |
| 123 | Paints and surface coatings | Gallons |
| 124 | Adhesives and sealants | Gallons |
| 125 | Asbestos-reinforced plastics | Pounds |
| 126 | Insulation materials not elsewhere classified (specify generic name) | (Specify) |
| 127 | Mixed or repackaged asbestos | Short Tons |

Case 3:19-cv-03807-EMC   Document 101-1   Filed 07/10/23   Page 86 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023 that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

83

| 128 | Aerial distress flares | Pieces |
| 129 | Acoustical product | Pieces |
| 130 | Ammunition wadding | Pieces |
| 131 | Ash trays | Pieces |
| 132 | Baking sheets | Pieces |
| 133 | Blackboards | Pieces |
| 134 | Candlesticks | Pieces |
| 135 | Chemical tanks and vessels | Pieces |
| 136 | Filters | Pieces |
| 137 | Grommets | Pieces |
| 138 | Gun grips | Pieces |
| 139 | Jewelry making equipment | Pieces |
| 140 | Kilns | Pieces |
| 141 | Lamp sockets | Pieces |
| 142 | Light bulbs (all types) | Pieces |
| 143 | Linings for vaults, safes, humidifies and filing cabinets | Pieces |
| 144 | Phonograph records | Pieces |
| 145 | Pottery clay | Pounds |
| 146 | Welding rod coatings | Pieces |
| 147 | Other (specify generic name) | (Specify) |

(v) *Reporting information for secondary processors.* For secondary processing reported under the activity identified in paragraph (e)(4)(i)(E) of this section, report by year:

(A) For Form B only, the estimated total quantity of asbestos processed.

(B) End product type listed in Table 4 of this paragraph. For each product type, report:

(1) For Form B only, the most specific asbestos types that apply. Select from among the asbestos types listed in Table 1 in paragraph (a) of this section. If the specific asbestos type is not known or reasonably ascertainable, report the general listing, asbestos CASRN 1332-21-4. Also report the quantity of each type of asbestos.

(2) The total annual production quantity of the end products produced, using the associated unit of measure listed in Table 4 of this paragraph.

(3) For Form B only, the percentage of asbestos in the end product.

(i) If testing was conducted, specify how often testing was conducted on the presence of

Case 3:19-cv-03807-EMC   Document 101-1   Filed 07/10/23   Page 87 of 93

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

84

asbestos in your products and what method and type of test was used for determining asbestos content, and provide the test results.

(ii) If testing was not conducted, explain how you knew or reasonably ascertained the presence and amount of asbestos in the end product.

(4) For Form B only, the disposition of the end product (see Table 3 of this paragraph).

(vi) *Reporting information for importers.* For importing reported under an activity identified in paragraph (e)(4)(i)(F) of this section, report by year:

(A) For Form B only, the estimated total quantity of asbestos imported.

(B) Imported product type (Table 4 of this paragraph). For each imported product type, report:

(1) Whether the imported product is a mixture or an article.

(2) For Form B only, the most specific asbestos types that apply. Select from among the asbestos types listed in Table 1 in paragraph (a) of this section. If a specific asbestos type is not known or reasonably ascertainable, report the general listing, "asbestos CASRN 1332-21-4". Also report the quantity of each asbestos type.

(3) The total annual import quantity of the imported product, using the associated unit of measure listed in Table 4 of this paragraph.

(4) Whether the imported asbestos was never physically present at the reporting site.

(5) For Form B only, the percentage of asbestos in the product.

(6) For Form B only, explain if you tested or received test results assessing the asbestos content of your imported product in the applicable reporting years.

(i) If testing was conducted, specify how often testing was conducted on the presence of asbestos in your imported product and what method and type of test was used for determining

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

asbestos content, and provide the test results.

(ii) If testing was not conducted, explain how you knew or reasonably ascertained the presence and amount of asbestos in the imported product.

(7) For Form B only, the disposition of the imported product (see Table 3 of this paragraph).

(5) *Employee information.* For each activity reported, report the following information about employees at the associated site:

(i) Number of employees involved with activity. Select from among the ranges of employees listed in Table 2 of this paragraph and report the corresponding code (i.e., W1 through W8).

(ii) Is personal protective equipment used? If yes, identify the type(s) of personal protective equipment used.

(iii) For Form B only, submit any workplace exposure measurement assessments and data (e.g., monitoring).

(f) *When to report.*

All information reported to EPA under this section must be submitted during the applicable submission period. The submission period shall begin six months following the effective date of this rule and last for three months.

(g) *Recordkeeping requirements.*

Each person who reports under this part must maintain records that document information reported under this part and in accordance with TSCA, permit access to, and the copying of such records by EPA officials. Relevant records must be retained for a period of five years beginning on the last day of the submission period.

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

(h) *Confidentiality claims.*

(1) *Assertion of confidentiality claims*—(i) *Generally.* Any person submitting information under this part may assert a confidentiality claim for that information, except for information described in paragraph (h)(1)(ii) of this section. Any such confidentiality claims must be asserted electronically, pursuant to § 704.180(i), at the time the information is submitted. Information claimed as confidential in accordance with this section will be treated and disclosed in accordance with the procedures in 40 CFR part 2 and section 14 of TSCA.

(ii) *Exceptions.* Confidentiality claims may not be asserted with respect to the following:

(A) Site NAICS code required by § 704.180(e)(3)(v);

(B) For chemical identities and bulk material forms required by §§ 704.180(e)(4)(ii)(A), (iii)(A), (iii)(B)(*3*), (iv)(B)(*1*), (v)(B)(*1*), and (vi)(B)(*2*);

(C) Any data element that is left blank or designated as "not known or reasonably ascertainable;" or

(D) Health and safety data required by § 704.180(e)(5)(iii), except that the following information may be claimed as confidential:

(*1*) Information that would reveal processes used in the manufacturing, importing, or processing of the substance or mixture, or the portion of a mixture comprised by any of the substances in the mixture, provided that the information is expressly identified as revealing processing information or portion of a mixture;

(*2*) Company name or address, financial statistics, and product codes used by a company and contained in a study; and

(*3*) Information other than company name or address, financial statistics, and product codes used by a company, which is contained in a study, the disclosure of which would clearly

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

87

be an unwarranted invasion of personal privacy (such as individual medical records).

(iii) *Certification statement for claims.* An authorized official representing a person asserting a claim of confidentiality must certify that the submission complies with the requirements of this part by signing and dating the following certification statement:

> "I certify that all claims for confidentiality asserted with this submission are true and correct, and all information submitted herein to substantiate such claims is true and correct. Any knowing and willful misrepresentation is subject to criminal penalty pursuant to 18 U.S.C. 1001. I further certify that: (1) I have taken reasonable measures to protect the confidentiality of the information; (2) I have determined that the information is not required to be disclosed or otherwise made available to the public under any other Federal law; (3) I have a reasonable basis to conclude that disclosure of the information is likely to cause substantial harm to the competitive position of my company; and (4) I have a reasonable basis to believe that the information is not readily discoverable through reverse engineering."

(2) *Substantiation.* (i) *Requirement to substantiate.* Confidentiality claims must be substantiated at the time of submission to EPA, unless exempt under paragraph (h)(2)(iv) of this section.

(ii) *Information in substantiations may be claimed as confidential.* Such claims must be accompanied by the certification described in paragraph (h)(1)(iii), but need not be themselves substantiated.

(iii) *Substantiation questions for all claims.* Answers to the following questions must be provided for each confidentiality claim in a TSCA submission:

(A) Please specifically explain what harm to the competitive position of your business would be likely to result from the release of the information claimed as confidential. How would that harm be *substantial?* Why is the substantial harm to your competitive position *likely* (i.e., probable) to be caused by release of the information rather than just *possible*? If you claimed multiple types of information to be confidential (e.g., site information, exposure information, environmental release information), explain how disclosure of each type of information would be

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

likely to cause substantial harm to the competitive position of your business.

(B) Has your business taken precautions to protect the confidentiality of the disclosed information? If yes, please explain and identify the specific measures, including but not limited to internal controls, that your business has taken to protect the information claimed as confidential. If the same or similar information was previously reported to EPA as non-confidential (such as in an earlier version of this submission), please explain the circumstances of that prior submission and reasons for believing the information is nonetheless still confidential.

(C)(1) Is any of the information claimed as confidential required to be publicly disclosed under any other Federal law? If yes, please explain.

(2) Does any of the information claimed as confidential otherwise appear in any public documents, including (but not limited to) safety data sheets; advertising or promotional material; professional or trade publications; state, local, or Federal agency files; or any other media or publications available to the general public? If yes, please explain why the information should be treated as confidential.

(3) Does any of the information claimed as confidential appear in one or more patents or patent applications? If yes, please provide the associated patent number or patent application number (or numbers) and explain why the information should be treated as confidential.

(D) Is the claim of confidentiality intended to last less than 10 (ten) years (see TSCA section 14(e)(1)(B))? If yes, please indicate the number of years (between 1 (one) and 10 (ten) years) or the specific date after which the claim is withdrawn.

(E) Has EPA, another federal agency, or court made any confidentiality determination regarding information associated with this chemical substance? If yes, please provide the

Case 3:19-cv-03807-EMC Document 101-1 Filed 07/10/23 Page 92 of 93
This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication
in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

89

circumstances associated with the prior determination, whether the information was found to be entitled to confidential treatment, the entity that made the decision, and the date of the determination.

(iv) *Exemptions from the substantiation requirement.* Confidentiality claims are exempt from the requirement to substantiate the claim at the time of submission for the data elements required pursuant to paragraphs (e)(4)(ii)(B)(*1*), (iii)(B)(*1*), (iv)(A), (iv)(B)(*2*), (v)(A), (v)(B)(*2*), (vi)(A), and (vi)(B)(3) of this section.

(v) *No claim of confidentiality*. Information not claimed as confidential in accordance with the requirements of this section may be made public without further notice.

(vi) *Public copies*. Submissions and their accompanying attachments that include a confidentiality claim must be accompanied, at the time of submission, by a public version of the submission and any attachments, with all information that is claimed as confidential removed. Only information that is claimed as confidential may be redacted or removed. Generally, a public copy that removes all or substantially all of the information would not meet the requirements of this paragraph.

(A) Where the electronic reporting tool contains a checkbox or other means of designating with specificity what information is claimed as confidential, no further action by the submitter is required to satisfy this requirement.

(B) For all other information claimed as confidential, including but not limited to information in attachments and in substantiations required under paragraph (h) of this section, the submitter must prepare and attach a public copy. Submissions with public or sanitized copies that are entirely blank or that are substantially reduced in length as compared to the CBI version will not meet the requirements of this paragraph (h)(2)(vi) of this section.

This is a prepublication version of a final rule signed by EPA on June 30, 2023, that is pending publication in the Federal Register. Although EPA has taken steps to ensure the accuracy of this prepublication version, it is not the official version.

(i) *Electronic reporting.*

You must use the EPA Central Data Exchange (CDX) to complete and submit the information required under this section. Submissions may only be made as set forth in this paragraph. Submissions must be sent electronically to EPA using the asbestos reporting tool in CDX. The information submitted and all attachments (unless the attachment appears in scientific literature) must be in English. All information must be true and correct. Access the asbestos reporting tool and instructions, as follows:

(1) *By website.* Access the asbestos reporting tool via the CDX homepage at https://cdx.epa.gov/ and follow the applicable instructions.

(2) *By phone or e-mail.* Contact the EPA TSCA Hotline at (202) 554-1404 or *TSCA-Hotline@epa.gov.*

*  *  *  *  *